**STATE of Iowa, Plaintiff–Appellee,**

v.

**Kevin Roy QUERY, Defendant–Appellant.**

**No. 97–1767.**

Court of Appeals of Iowa.

Feb. 24, 1999.

Thomas J. McCann, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General,

John P. Sarcone, County Attorney, and Steve Foritano, Assistant County Attorney, for appellee.

Considered by SACKETT, C.J., and STREIT and MAHAN, JJ.

MAHAN, J.

Kevin Roy Query appeals from his conviction, following a jury trial, for third-degree sexual abuse in violation of Iowa Code section 709.4 (1995) and sexual exploitation of a minor in violation of Iowa Code section 728.12 (1995). Query contends the district court erred in its: denial of Query's motion to sever; admission of evidence of other acts, character, and expert testimony on grooming and profiling of sex offenders; and response to jury questions. Query maintains the evidence is insufficient to support the verdicts and his trial counsel was ineffective if error was not preserved on the admission of the expert testimony. We affirm.

Query is a forty-one-year-old former assistant U.S. attorney in the Southern District of Iowa. He and his former wife, Sharon, were married for about fifteen years. They have three children. Their daughter, K.Q., was born in 1984.

The Query family home had one-and-one-half baths. The shower curtain was clear plastic and Query would use the bathroom while K.Q. was showering. Query was in the habit of being nude around his daughter; he walked around the house wearing nothing or only a t-shirt, and sometimes Query would get into the shower with K.Q., despite her requests that he not do so. On one occasion in the Spring of 1996, Query walked into the bathroom and saw K.Q. wrapping a towel around herself. He noticed she had pubic hair growing and stroked it with the back of one finger while saying, "Pretty, pretty, pretty" or "Very nice."

K.Q. had long hair at Query's insistence. He worried she would have her hair cut too short whenever she went in for a trim.

He usually would not allow Sharon and K.Q. go to hair appointments alone. Query was concerned about finding a hairdresser he "could trust" and called the hairdresser to discuss K.Q.'s hair. On several occasions, including once in the Fall of 1996, Query took photographs of K.Q., while she was nude, before hair appointments.

Query's conduct towards his daughter came to light when a camera store reported there were photographs of a nude minor on the roll of film they had developed for Query. The minor was subsequently identified as Query's daughter, K.Q. Following an investigation, Query was ultimately charged with one count of third-degree sexual abuse based upon an incident in which he commented upon and stroked K.Q.'s pubic hair and one charge of sexual exploitation of a minor based upon the photographs he had taken of K.Q. while she was nude.

Query filed a motion to sever Counts I and II. He also filed a motion in limine to prohibit the introduction of evidence that he showered with K.Q., sometimes was nude or only wore a t-shirt around other family members, was an attorney, or was "a very controlling person and ran the household." These motions were denied and Query's case was tried to a jury.

Query admitted he had touched K.Q.'s pubic hair and had photographed her while she was nude, but denied that any sex act had taken place or he had been motivated by a sexual intent. At trial, Query testified he had touched K.Q.'s pubic hair because he was trying to give her the message, "Don't be embarrassed about growing up."

Query stated he took the photographs of K.Q. to record what her hair looked like before the hair appointments. He insisted she take her clothes off for the photographs because he did not want the clothing to obscure K.Q.'s hair. He also felt that was "the right way" to photograph hair because shampoo advertisements generally show the model's hair against bare

shoulders. He also testified he had used an unfamiliar camera and did not realize K.Q.'s buttocks and pubic hair would be part of the photographs.

Query explained some mornings he had showered with K.Q. because when K.Q. slept late it was the only way everyone could get ready on time. Query also stated he needed to help K.Q. wash her hair when Sharon was not around so it would not become all knotted up or tangled because of its length. Query denied having erections while in the shower with K.Q., although she testified he had one about half of the time he had showered with her.

Query's therapist, a licensed social worker, testified on cross-examination about the profile of a sex offender. She explained "grooming" in the context of sexual abuse and provided examples of such conduct. When recalled as a witness for the State's rebuttal, she testified regarding Query's denial and that denial is a problem typically seen with sex offenders.

After submission of the case to the jury, the jury requested a more detailed description of the "genitalia area," specifically the exterior vaginal area. Query proposed the following response:

> [T]he pubic hair itself and the skin out of which the pubic hair is growing is not part of the genitalia. Touching only the pubic hair or the skin out of which the pubic hair grows is not a sex act.

The district court rejected Query's proposed instruction and responded, in part:

> The female external genitalia comprise the mons pubis (or mons veneris), . . . .
>
> The mons pubis or mons veneris is the rounded, median elevation in front of the pubic symphysis. It consists mostly of an accumulation of fat. After puberty, the skin over it is covered with coarse (pubic) hair.

The jury returned a verdict of guilty on both counts. Query's motions for a new trial and for an arrest of judgment were denied. Query was sentenced to two inde-

terminate ten-year terms, to run concurrently, and fined a total of $10,000.

### ■ I. MOTION TO SEVER.

We review a trial court's refusal to sever multiple charges against a single defendant for abuse of discretion. *State v. Geier*, 484 N.W.2d 167, 172 (Iowa 1992). Iowa Rule of Criminal Procedure 6(1) permits a joinder of offenses in a single complaint, information, or indictment when the offenses charged are based on (1) the same transaction or occurrence, or (2) a common scheme or plan. *State v. Lam*, 391 N.W.2d 245, 249 (Iowa 1986). The defendant has the burden to show "his interest in receiving a fair trial uninfluenced by the prejudicial effects which could result from a joint trial outweighed the State's interest in judicial economy." *Lam*, 391 N.W.2d at 251(quoting *State v. Trudo*, 253 N.W.2d 101, 104 (Iowa), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977)).

■ To constitute a common scheme or plan, the crimes charged must have a common link which may be established by showing "a single and continuing motive," a close proximity in time or place, or the same means of commission of the crimes. *State v. Delaney*, 526 N.W.2d 170, 174 (Iowa App.1994); *Lam*, 391 N.W.2d at 250. In the case at bar, the State's evidence is sufficient to show a common scheme or plan: both of the crimes charged involve Query's interest in seeing his daughter while she is nude, and the incidents occurred in the family home within a one-year period. *See State v. Dicks*, 473 N.W.2d 210, 214 (Iowa App.1991) (no severance required where similar acts, spanning a three-year period, show a long-standing and continuing motive to gratify defendant's sexual desires).

■ Judicial economy also plays an important role in this case because, even if the separate acts in this case were not part of the res geste, they nevertheless may have been admissible to show defendant's motive, opportunity, intent, preparation, plan, or knowledge. *See* Iowa R. Evid. 404(b); *Dicks*, 473 N.W.2d at 214. Therefore, we find Query failed to demonstrate his interest in avoiding the prejudice of joinder of the charges outweighs the State's interest in judicial economy. It was not an abuse of discretion to deny the motion to sever.

### ■ II. ADMISSION OF EVIDENCE.

We review evidentiary issues for an abuse of discretion. *State v. Most*, 578 N.W.2d 250, 253 (Iowa App.1998).

**A. Other Acts and Character Testimony.** Query contends the district court erred when it admitted testimony into evidence, under the exceptions to Iowa Rule of Evidence 404(b), that Query showered with K.Q., sometimes was nude or only wore a t-shirt around other family members, or was "a very controlling person and ran the household." We disagree.

■ In determining whether evidence of "other crimes, wrongs, or acts" is admissible, the trial court must employ a two-step analysis. The court must first decide whether the evidence is relevant and there is clear proof the individual against whom the evidence is offered committed the prior acts. *State v. Zeliadt*, 541 N.W.2d 558, 560–561 (Iowa App.1995). If the court finds it is relevant, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *State v. Casady*, 491 N.W.2d 782, 785 (Iowa 1992); *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988); Iowa R. Evid. 403. A positive finding as to the second step overcomes the evidence's prima facie admissibility. *Plaster*, 424 N.W.2d at 229. Iowa recognizes a special exception in sex abuse cases which permits use of prior acts "to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." *State v. Schaffer*, 524 N.W.2d 453, 456 (Iowa App.1994) (quoting *State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981)).

■ The basic test of relevancy is whether the evidence offered would make

the desired inference more probable than it would be without the evidence. *Casady,* 491 N.W.2d at 785. At trial, Query admitted he had photographed K.Q. while she was nude but contended he did not have the requisite sexual intent to commit a violation of Iowa Code section 728.12. Intent is rarely susceptible of direct proof but it may be inferred from outward acts and attending circumstances. *See State v. Venzke,* 576 N.W.2d 382, 383 (Iowa App. 1997). The challenged evidence of prior acts make the inference of intent more probable than it would be without the evidence. *See State v. Seevanhsa,* 495 N.W.2d 354, 358 (Iowa App.1992).

■■ Finally, Query argues any probative value of the evidence is outweighed by the danger of unfair prejudice. In balancing probative value against the danger of unfair prejudice, we consider many factors, including (1) the actual need for the evidence in view of the issues and the other available evidence, (2) the strength of the evidence showing the prior bad acts were committed by the accused, (3) the strength or weakness of the prior bad acts evidence in supporting the issue sought to be proven, and (4) the degree to which the jury will probably be roused by the evidence to overmastering hostility and use the evidence improperly. *Zeliadt,* 541 N.W.2d at 562.

■■ In the case at bar, the State needed the prior bad acts evidence to establish the sexual intent element of the charges and rebut Query's claims the acts were innocent or accidental. Query did not deny he committed the prior bad acts and offered evidence of his controlling nature in his own testimony. These acts can reasonably be interpreted as "grooming" of K.Q. to be a sexual abuse victim, thus showing Query's motive, intent, plan, knowledge, or absence of mistake. Query has failed to adequately distinguish the case at bar from other cases in which evidence has been properly admitted under the sexual abuse exception; the prior bad acts evidence involved the same victim, in the same location, and within the same general time period as the charged acts. *See State v. Jones,* 464 N.W.2d 241, 243 (Iowa 1990); *Schaffer,* 524 N.W.2d at 456; *Seevanhsa,* 495 N.W.2d at 358; *State v. Tharp,* 372 N.W.2d 280, 281 (Iowa App.1985)(citing *Spaulding,* 313 N.W.2d at 880). We find there was no abuse of discretion in allowing this evidence.

**B. Expert Testimony on Grooming Victims and Profiling of Sex Offenders.** Query failed to preserve error on this issue; no objection was made when the State elicited the "grooming" and profiling evidence from Query's therapist during cross-examination and the State's rebuttal. *See State v. Halliburton,* 539 N.W.2d 339, 343 (Iowa 1995). However, Query argues if error was not preserved on this issue, his trial counsel was ineffective for failing to object to the testimony.

■■ Ordinarily, we preserve claims of ineffective assistance of counsel raised on direct appeal for postconviction proceedings to allow full development of the facts surrounding counsel's conduct. *State v. Atley,* 564 N.W.2d 817, 833 (Iowa 1997). "Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). However, we will resolve ineffective-assistance-of-counsel claims on direct appeal when the record is adequate to decide the issue. *State v. Arne,* 579 N.W.2d 326, 329 (Iowa 1998). We review claims of ineffective assistance of counsel de novo. *State v. Brooks,* 555 N.W.2d 446, 448 (Iowa 1996).

■■ The defendant bears the burden of demonstrating ineffective assistance of counsel. *State v. Morgan,* 559 N.W.2d 603, 612 (Iowa 1997); *Dunbar v. State,* 515 N.W.2d 12, 15 (Iowa 1994); *State v. Kone,* 557 N.W.2d 97, 102 (Iowa App.1996). "A defendant receives ineffective assistance of counsel when (1) the defense attorney fails in an essential duty and (2) prejudice results." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80

L.Ed.2d 674, 693 (1984); *State v. Bugely*, 562 N.W.2d 173, 178 (Iowa 1997). An ineffective-assistance-of-counsel claim may be disposed of if the defendant fails to prove either prong. *State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997). Therefore, we may affirm Query's convictions based on his failure to prove prejudice without deciding whether his counsel failed to perform an essential duty. *See State v. Hoeck*, 547 N.W.2d 852, 863 (Iowa App. 1996).

 The defendant establishes prejudice by showing "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the defendant's trial. *Bugely*, 562 N.W.2d at 178 (quoting *State v. Kraus*, 397 N.W.2d 671, 673 (Iowa 1986)).

 As discussed below, the State presented substantial evidence of Query's guilt. Even without the expert testimony on "grooming" and profiling, the evidence presented would have reasonably permitted the jury to reach the conclusion it did. *See State v. Bayles*, 551 N.W.2d 600, 610 (Iowa 1996).

## III. RESPONSE TO JURY QUESTION.

It is within the discretion of the trial court to give additional instructions, after the jury has retired for deliberations, upon a jury request for more information on a point of law arising in the case. Iowa R.Crim. P. 18(5)(g). The interest of justice requires the jury have a full understanding of the case. *State v.*

*Martens*, 569 N.W.2d 482, 485 (Iowa 1997). We will not reverse the district court unless we find there has been an abuse of discretion. *State v. Watkins*, 463 N.W.2d 15, 18 (Iowa 1990).

 In the case at bar, the additional instructions correctly stated Iowa law. *Martens*, 569 N.W.2d at 486–487 (a conviction based on the understanding that pubic hair is included in the term "genitalia" and is a part of the "genitalia area" would have been legally correct). Therefore, we find the district court's response to the jury questions was not an abuse of discretion. *See State v. Tillman*, 514 N.W.2d 105, 109 (Iowa 1994); *c.f. McLaughlin v. State*, 533 N.W.2d 546, 548 (Iowa 1995) (error to identify and restate evidence that was a part of the State's case).

## IV. SUFFICIENCY OF THE EVIDENCE.

Our review of sufficiency-of-evidence challenges is for correction of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). The jury's findings of guilt are binding on appeal if supported by substantial evidence. *State v. Allen*, 348 N.W.2d 243, 247 (Iowa 1984). In deciding whether there is such substantial evidence, we view the record evidence in the light most favorable to the State. *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993). Substantial evidence is such evidence as could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.*

 The fighting issues at trial were whether the touching of K.Q.'s pubic hair constituted a "sex act" under Iowa Code section 702.17 and whether Query had a sexual intent when he photographed his daughter while she was nude. After review of the record, we find the guilty verdicts are supported by substantial evidence. Query does not deny he committed the acts in question; K.Q. testified she could feel his finger rubbing against her; and the jury could reasonably infer from

the prior bad acts evidence that Query's purpose in photographing his daughter nude was to arouse or satisfy his sexual desires.

We affirm the judgment and sentence entered upon Query's convictions for third-degree sexual abuse and sexual exploitation of a minor.

**AFFIRMED.**