[EDITORS' NOTE: THE PUBLICATION STATUS OF THIS OPINION HAS NOT BEEN DETERMINED. THE PRECEDENTIAL VALUE OF CASES WHICH ARE NOT YET PUBLISHED IS GOVERNED BY IOWA CT. R. 6.14 (5).]
Defendant, Ricky Jones, was charged with sexual abuse in the third degree in violation of Iowa Code section 709.4 (2005) (count I), assault with intent to commit sexual abuse in violation of section 709.11 (count II), and indecent exposure in violation of section 709.9 (count III). On count I, a jury found Jones guilty of the lesser offense of assault with intent to commit sexual abuse. They found Jones guilty on counts II and III. Jones appeals his conviction claiming he received ineffective assistance of counsel because his attorney did not object to admission of evidence of Jones's other bad conduct.
BACKGROUND.
Jones allegedly assaulted his step-daughter between January 2004 and March 2005. Jones and the child's mother, Suann, began living together sometime in 1997, when the alleged victim was eight years old. The household consisted of Jones, Suann, Jones's daughter, Suann's three sons, and Suann's daughter. The couple married in 2003. Suann's daughter had a good relationship with Jones and called him "dad." Jones and the children often wrestled and engaged in horseplay.
When the step-daughter entered puberty, around eleven or twelve, she felt Jones's treatment of her became inappropriate. She testified that Jones sometimes grabbed her butt and breasts. She believed the behavior to be a game initially. For example, they would play a game where she would hold her hands up and Jones would race to grab her breasts before she could get her hands down. When she was fourteen or fifteen, she increasingly felt the behavior was unnatural. She would no longer play "the game" with him but he continued to grab her breasts when no one was looking.
His behavior became more aggressive and controlling. Once Jones allegedly pushed the girl back on a bed, held her arms, and said that he wanted to have sex with her and that he could if he wanted to. He required her to model new underwear for him. During these times she claimed he would touch her vagina area and make sexual comments. She claimed that he exposed himself to her once and sometimes tried to force her hand to touch his penis. One time, the girl kneed Jones in the groin area to get away from him and Jones had to be treated at a hospital. Jones was a more strict disciplinarian than the girl's mother. Sometimes Jones prohibited the girl from seeing her friends or talking on the phone. Jones did not approve of the girl's clothing and prohibited her from dating. In February of 2005, Jones cut up nearly all of the girl's clothing because he felt they were inappropriate and he was angry at the girl for not putting her makeup away.
Suann testified that her daughter told her about some of Jones's behavior. Suann testified that she told the defendant to stop and he apologized. She testified that she did see Jones grabbing her daughter's butt at times and once noticed Jones touching her daughter's breasts. She testified that when Jones and her daughter were alone in a room and she would enter, Jones would "jump away."
The defendant also testified. He admitted to pinning the step-daughter on to the bed and to grabbing and twisting her breasts when they wrestled. He denied ever making any sexual comments or having sexual intentions. He claimed any touching was accidental or due to wrestling. He denied ever touching her vagina area or exposing himself to her. He admitted to making the step-daughter model underwear for him once so he could make sure she was wearing the right size. He admitted to cutting up her clothes. He stated that at the time he was angry about several family problems. After the incident, he felt bad, gave his step-daughter money to buy new clothes, and cut up his own clothes.
Shortly after Jones cut up the clothing, the step-daughter confided to a friend about Jones's inappropriate touching. The friend's mother helped the alleged victim contact the Department of Human Services (DHS). After an investigation by DHS and the police, charges were filed. A jury convicted Jones of two counts of assault with intent to commit sexual abuse and one count of indecent exposure.
He appeals contending his counsel should have objected to the introduction of evidence regarding the clothes cutting incident. Jones did not challenge the admission of evidence at trial but he does so now. Jones contends this is evidence of other bad acts which is prohibited under the Iowa Rules of Evidence. Jones argues he received ineffective assistance of counsel because of this failure. The State argues the admitted evidence was proper and counsel was effective.
ERROR PRESERVATION AND SCOPE OF REVIEW.
Ineffective assistance of counsel claims are an exception to the general error preservation rule and thus do not need to be raised in the district court to assure appellate consideration.State v. Doggett, 687 N.W.2d 97, 100 (Iowa 2004). On direct appeal, a court may evaluate the merits of an ineffective assistance of counsel claim if the record is sufficient, as it is here. Id. (citing State v. Liddell,672 N.W.2d 805, 809 (Iowa 2003)). Ineffective assistance of counsel claims implicate rights under the Sixth Amendment and are reviewed de novo. State v. Scalise, 660 N.W.2d 58, 61
(Iowa 2003). We will independently evaluate the claimed errors under the totality of the circumstances. Osborn v.State, 573 N.W.2d 917, 920 (Iowa 1998).
INEFFECTIVE ASSISTANCE OF COUNSEL.
To prevail on an ineffective assistance of counsel claim, the applicant must prove both: (1) the attorney's "representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." Strickland v.Washington, 466 U.S. 668, 687-688, 104 S. Ct. 2052, 2064,80 L. Ed. 2d 674, 693 (1984). The applicant must prove both elements by a preponderance of the evidence. Ledezma v.State, 639 N.W.2d 134, 142 (Iowa 2001). "To prove the first prong, the defendant must overcome the presumption that counsel was competent and show that counsel's performance was not within the range of normal competency." State v. Buck,510 N.W.2d 850, 853 (Iowa 1994) (citing Brewer v. State,444 N.W.2d 77, 83 (Iowa 1989)). Prejudice is proven when "counsel's failure worked to the defendant's actual and substantial disadvantage so that a reasonable possibility exists that but for counsel's error the trial result would have been different." Buck, 510 N.W.2d at 853. We dispose of the claim if it fails either prong. State v. Cook,565 N.W.2d 611, 614 (Iowa 1997).
BAD ACTS EVIDENCE.
To establish ineffective assistance of counsel, defendant must prove his counsel breached an essential duty by not objecting to the bad acts evidence and the defendant was prejudiced by this failure. Defendant argues that objecting to testimony of the clothes cutting incident was an essential duty because admission of the testimony violated rules of evidence. He claims this testimony was irrelevant, unfairly prejudicial, and impermissible character evidence. Counsel only breached an essential duty if the evidence was inadmissible; for, "[t]rial counsel is not incompetent in failing to pursue a meritless issue." State v. Ceaser, 585 N.W.2d 192, 195 (Iowa 1998). Furthermore, "[i]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel."State v. Ondayog, 722 N.W.2d 778, 786 (Iowa 2006) (quoting State v. McKettrick, 480 N.W.2d 52, 55 (Iowa 1992)).
Evidence of a defendant's "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Iowa R. Evid. 5.404 (b). Even though other bad conduct cannot be used to show a defendant has a propensity to commit a crime, this evidence can be used for limited purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Other exceptions exist in sex abuse and domestic violence cases although we find them inapplicable here.[1]
There is a two-part test to determine whether evidence of other bad acts is admissible. First, the evidence of the other acts must be relevant and there must be clear proof the defendant committed those acts. State v. Query, 594 N.W.2d 438,443 (Iowa Ct.App. 1999) (citing State v. Zeliadt,541 N.W.2d 558, 560-61 (Iowa Ct.App. 1995)). If relevant, then the court determines whether the "evidence's probative value is outweighed by the danger of unfair prejudice." Query,594 N.W.2d at 443 (citing Iowa R. Evid. 5.403; State v.Casady, 491 N.W.2d 782, 785 (Iowa 1992); State v.Plaster, 424 N.W.2d 226, 229 (Iowa 1988)). The starting point for bad acts relevancy analysis is determining whether the other bad conduct is "material to some legitimate issue other than a general propensity to commit wrongful acts."Plaster, 424 N.W.2d at 229. The State argues that Jones's cutting up of the girl's clothes is probative of whether Jones had the specific intent to engage in a sex act or to cause arousal for purposes of the assault and indecent exposure charges. Evidence is relevant if "the evidence offered would make the desired inference more probable than it would be without the evidence." Casady, 491 N.W.2d at 785.
We find the testimony of the clothes cutting incident was not probative of Jones's specific intent on the occasions he assaulted his step-daughter and exposed himself. First, Jones cut the clothes after the sexual assaults or indecent exposure occurred. We acknowledge that subsequent bad acts can be as relevant as prior bad acts. See State v. Munz,355 N.W.2d 576, 581-83 (describing Iowa cases where subsequent bad acts have been relevant and admissible in sex abuse cases). However, here there is no relevant connection between the crime and subsequent act. There was no testimony that Jones cut the clothes in retaliation for his step-daughter's rejection of his advances that would provide a connection to Jones's specific intent at the time of the crimes. The clothes cutting incident did not bear any similarity to the conduct involving inappropriate touching or Jones exposing himself. Since this was an isolated incident, the cutting of the clothes does not show a pattern of behavior indicating jealousy or possessiveness. The destruction of clothes here cannot be clearly deemed sexually motivated. Parents often attempt to control what their teenagers wear and inappropriate clothing choices are a legitimate parental concern. The fact that Jones cut up his step-daughter's clothes does not make it more probable that Jones previously had the specific intent to commit a sex act with his step-daughter when he assaulted her. Nor does this incident reflect what Jones's specific intent was when he previously exposed himself to her. Since this evidence was irrelevant, it was inadmissible. See Iowa R. Evid. 5.402 (stating that "[e]vidence which is not relevant is not admissible").
As discussed below, we can find legitimate tactical reasons why Jones's counsel would have refrained from objecting to this evidence. However, "[t]he fact that a particular decision was made for tactical reasons does not . . . automatically immunize the decision from a Sixth Amendment challenge."Ondayog, 722 N.W.2d at 786. Therefore, we will assume trial counsel failed an essential duty in not objecting to testimony of inadmissible evidence of the clothes cutting incident.
Even if counsel was required to object to this evidence in order to perform effectively, defendant's claim must fail because he cannot prove prejudice. The prejudice element requires showing that without counsel's error, there is a "probability sufficient to undermine confidence in the outcome."Id. (quoting Strickland, 466 U.S. at 694,104 S. Ct. at 2068, 80 L. Ed. 2d at 698). Jones cannot prove that his counsel's failure to object to the clothes cutting testimony was prejudicial because the testimony was beneficial to Jones in several respects and far less damaging than other, relevant testimony.
The testimony about Jones cutting up his step-daughter's clothing was more favorable to the defendant than damaging. The incident portrayed Jones as a frustrated parent with a rebellious teen rather than as a sex abuser. No one testified that Jones cut up the clothes out of obsession with or jealousy of the girl. Rather, all persons testified that Jones was angry about multiple family issues, including finances, marital problems, and a disobedient step-daughter. The record shows the step-daughter reported the inappropriate touching to friends and authorities shortly after Jones cut up her clothes. This evidence showed that the girl may have created the allegations of abuse in retaliation for Jones's destruction of her clothes. Since this evidence aided Jones's defense of denial, it cannot be considered prejudicial.
Furthermore, the testimony about Jones's long-term, ongoing uninvited touching and inappropriate games, along with the required underwear modeling were far more damaging to the defendant than the sole incident of destroying the girl's clothing. "In determining the prejudicial effect of evidence, the court reviews the other evidence presented and `weigh[s] it against any prejudicial effect.'" State v. Rodriquez,636 N.W.2d 234, 244 (Iowa 2001). Here, the prejudicial effect of Jones's bad act of cutting up the clothes was minimal in comparison to the other evidence in the record documenting his behavior toward his stepdaughter. See id. (finding no prejudice occurred when evidence of a subsequent assault on the same victim was admitted given the substantial other admissible evidence of assault already in the record). There is no reasonable probability that the outcome of defendant's case would have been different if the testimony of the clothes cutting incident had not been admitted. Since the defendant cannot prove his defense was prejudiced by his counsel's failure to object to irrelevant evidence of other bad acts, defendant's ineffective assistance of counsel claim must fail and we affirm his conviction.
AFFIRMED.
[1] In sex abuse cases, prior acts with the victim are admissible "to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." State v. Spaulding, 313 N.W.2d 878, 880 (Iowa 1981) (quoting McCormick's Handbook on the Law ofEvidence, §§ 190, at 449 (E. Cleary 2d ed. 1972)). The State argues that the clothes cutting incident was relevant to show that Jones "harbored feelings of sexual possessiveness and jealousy" toward his step-daughter. However, the clothes cutting incident was not clearly sexual in nature. The charged crime and the bad act conduct are dissimilar and the sexual connection the State argues between Jones's destruction of the clothes and the sex abuse charge is tenuous and a stretch. See State v.Castaneda, 621 N.W.2d 435, 448 (Iowa 2001) (Snell, J., specially concurring) (finding the State's use of defendant's prior legal sex act with wife which did not involve children as a prior bad act showing propensity for illicit sex with children in a later sex abuse case "stretches the word `relevant' in a fashion that would unreasonably admit remotely connected subject matter having sex as a nexus").
In domestic violence situations, the Iowa Supreme Court has permitted evidence of prior assaults on the victim because "the defendant's prior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations." State v. Taylor, 689 N.W.2d 116, 125 (Iowa 2004). However, in this case, the evidence disputed is not a prior assault on the child. Rather, it is conduct that occurred subsequent to the alleged sexual assaults. Although perhaps probative of the relationship between Jones and his step-daughter, it is not probative of whether Jones had the requisite specific intent when he assaulted or exposed himself to the child in the past.