# IN THE COURT OF APPEALS OF IOWA

No. 19-1403
Filed July 22, 2020

**IN THE INTEREST OF B.G.B.,**
**Minor Child,**

**A.H.,**
    Petitioner-Appellant,

**C.W., Father,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

A child's legal custodian appeals the order denying a petition to terminate the father's parental rights. **AFFIRMED.**

Alice E. Helle and Sarah E. Wilson of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellant.

Teresa Pope of Branstad & Olson Law Office, Des Moines, for appellee.

Craig S. Rogers, Waukee, attorney and guardian ad litem for minor child.

Heard by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

This is an appeal from the district court order denying a petition to terminate a father's parental rights to his child in a private termination action brought under Iowa Code chapter 600A (2019). The main question before us is whether a father abandoned his child. Because we agree the evidence falls short of showing abandonment, we affirm.

**I. Background Facts and Proceedings.**

The child at issue was born in January 2019. Three days later, the mother signed a release of custody to allow for private adoption of the child. As part of the release, the mother designated and appointed a third party as the child's custodian for a termination action and the adoption.

Two days after the mother signed the release, the custodian filed a petition to terminate parental rights under Iowa Code section 600A.5. The petition noted the mother had signed a release of custody. *See* Iowa Code § 600A.8(1) (allowing termination of parental rights if a parent signs a release of custody that has not been revoked). With regard to the father, the petition alleged that the father was "expected to fail to appear" and that "he has abandoned the child and has thereby given up his parental rights and responsibilities." *See id.* § 600A.8(3)(a) (allowing termination of parental rights if a parent is deemed to have abandoned the child).

The mother and father were in a relationship when the mother informed the father of her pregnancy during the first week of June 2018. Although the father was happy about the pregnancy and excited to be a dad, his relationship with the mother soured. The father was arrested and charged with attempted burglary at the mother's home on June 17, 2018, the court issued an order of protection

preventing the father from contacting the mother. In July 2018, the father was arrested for violating the no-contact order. And in August 2018, the father was arrested and charged with domestic abuse assault, which led the court to issue a second no-contact order. The father pled guilty to third-degree criminal mischief and assault causing bodily injury. As a result, the father was incarcerated from October 2018 until he was paroled in June 2019. The court also issued a five-year no-contact order to prevent the father from contacting the mother.

In October 2018, the father unsuccessfully moved to modify the no-contact order to allow communication with the mother about the child. He also petitioned for paternity and genetic testing. The father again petitioned the court for a test to establish his paternity in January 2019, before the child was born.

The father was served the petition to terminate parental rights in February 2019. After receiving the notice, the father again moved the court to order paternity testing. That testing determined he was the child's father, and the court granted the father's motion to place his name on the child's birth certificate. The father also moved for visitation with the child, but the court denied his request because "[t]here is no provision for visitation in chapter 600A or any other provision of the Iowa Code that applies to this matter."[1]

While incarcerated, the father completed courses on parenting, healthy relationships, and achieving change through value-based behavior. After his June

---

[1] In the alternative, the court found visitation was not in the child's best interests based on the child's age and the father's history of violent behavior toward the mother while she was pregnant with the child. It also noted that the issue was "premature" as visitation would be determined in a separate proceeding if the court declined the petition to terminate the father's parental rights.

2019 release, the father moved in with his brother and his brother's family and obtained employment. The father began mental-health therapy and was sending money to support the child on a weekly basis. But the father was again arrested in July 2019 for violating parole and the no-contact order. He was incarcerated at the time of the termination hearing on July 30, 2019.

On August 15, the district court entered its order denying the petition to terminate parental rights. It found the custodian failed to prove the father had abandoned the child. In the alternative, the court found termination of the father's parental rights was not in the child's best interests. The court dismissed the petition to terminate parental rights. It also dismissed the mother's release of custody because the mother signed it for the purpose of placing the child for adoption. The custodian appeals.[2]

---

[2] In a footnote in his appellate brief, the father referenced facts occurring after the district court entered its order. In her reply appellate brief, the custodian noted that the facts discussed in the footnote were outside the record, but she responded to them. Both attorneys mentioned the same outside-the-record facts during oral argument. We confine our review to the record made before the district court at that hearing. *See* Iowa R. App. P. 6.801 ("Only the original documents and exhibits filed in the district court case from which the appeal is taken, the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court constitute the record on appeal."); *State v. Boggs*, 741 N.W.2d 492, 505 n.2 (Iowa 2007) ("It is a fundamental principle that our review of district court rulings is limited to the record made before the district court."); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("[C]ounsel has referred to matters apparently not a part of the record of this appeal. We admonish counsel to refrain from such violations of the rules of appellate procedure. We are limited to the record before us and any matters outside the record on appeal are disregarded."). Because events after the hearing are beyond the scope of the proper record on appeal, we do not consider them. *See Keith*, 513 N.W.2d at 771.

**II. Scope and Standard of Review.**

We review terminations under chapter 600A de novo. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We are not bound by the trial court's fact findings but give weight to them, especially those concerning witness credibility. *See id.* The most important consideration is the child's best interests. *See id.*

**III. Analysis.**

The custodian challenges the district court's finding that the father did not abandon the child and that termination was not in the child's best interests. The custodian contends the district court misconstrued and misapplied the provisions of chapter 600A regarding abandonment by (1) stating an intent to abandon is a requirement for a finding of abandonment, (2) distinguishing prior precedent regarding incarcerated parents, and (3) failing to apply the factors listed in section 600A.8(3)(a)(2).

Iowa Code section 600A.8(3) allows the termination of parental rights when a parent abandons a child. A parent is deemed "to have abandoned a child" less than six month of age unless the parent does all of the following: (1) "[d]emonstrates a willingness to assume custody of the child rather than merely objecting to the termination of parental rights"; (2) "[t]akes prompt action to establish a parental relationship with the child"; and (3) "[d]emonstrates, through actions, a commitment to the child." Iowa Code § 600A.8(3)(a)(1). In determining whether a parent has met those requirements, the court may consider the following:

> (a) The fitness and ability of the parent in personally assuming custody of the child, including a personal and financial commitment which is timely demonstrated.

(b) Whether efforts made by the parent in personally assuming custody of the child are substantial enough to evince a settled purpose to personally assume all parental duties.

(c) With regard to a putative father, whether the putative father publicly acknowledged paternity or held himself out to be the father of the child during the six continuing months immediately prior to the termination proceeding.

(d) With regard to a putative father, whether the putative father paid a fair and reasonable sum, in accordance with the putative father's means, for medical, hospital, and nursing expenses incurred in connection with the mother's pregnancy or with the birth of the child, or whether the putative father demonstrated emotional support as evidenced by the putative father's conduct toward the mother.

(e) Any measures taken by the parent to establish legal responsibility for the child.

(f) Any other factors evincing a commitment to the child.

*Id.* § 600A.8(3)(a)(2).

The custodian contends the district court erred in stating that a parent's intent to abandon the child is an element for termination of parental rights under section 600A.8(3). In outlining the requirements for termination under section 600A.8(3)(a), the court relied on the following statement from *C.A.V.*, 787 N.W.2d at 101:

> Abandonment is characterized as the "giving up of parental rights and responsibilities accompanied by an intent to forego them." *In re Burney*, 259 N.W.2d 322, 324 (Iowa 1977). "Two elements are necessary to show abandonment: the conduct of the parent in giving up parental rights and responsibilities and the parent's intent to do so." *In re Goettsche*, 311 N.W.2d 104, 106 (Iowa 1981). A parent may evince an intent to abandon the child even though the parent subjectively maintains an interest in the child if that interest is not accompanied by "affirmative parenting to the extent practical and feasible in the circumstances." *Id.*

The custodian notes that the cases cited in *C.A.V.* interpreted an earlier version of chapter 600A, which the legislature amended in 1997. She argues those amendments eliminate any requirement to show a parent's intent to abandon a child in order to terminate under section 600A.8(3).

Prior to 1997, chapter 600A defined the phrase "to abandon a minor child" to mean "to permanently relinquish or surrender, without reference to any particular person, the parental rights, duties, or privileges inherent in the parent-child relationship. The term includes both *the intention to abandon* and the acts by which the intention is evidenced." *In re G.A.*, 826 N.W.2d 125, 128 n.3 (Iowa Ct. App. 2012) (emphasis added) (quoting Iowa Code § 600A.2(18) (1995)). But in 1997, the legislature amended chapter 600A to state that "to abandon the child" means that a parent "rejects the duties imposed by the parent-child relationship . . . , which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." 1997 Iowa Acts ch. 161, § 1 (now codified at Iowa Code § 600A.8(2)(20) (2019)). The legislature also amended section 600A.8(3) to add a new paragraph. *See* 1997 Iowa Acts ch. 161, § 2 (now codified at Iowa Code § 600A.8(3)(c)). That paragraph now states:

> The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in paragraph "a" or "b" manifesting such intent, does not preclude a determination that the parent has abandoned the child. In making a determination, the court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraph "a" or "b".

Iowa Code § 600A.8(3)(c).

We reject the custodian's assertion that legislative amendments altered the requirements for finding a parent abandoned a child. Although the legislature altered the statutory definition of abandonment, the concept remained the same; where the earlier version refers to an intent to abandon and evidence of that intent as shown by a parent's actions, *see id.* § 600A.2(18) (1995), the amended version

refers to a rejection of parental "duties" as shown by a parent's acts of failing to support or communicate with the child, *see id.* § 600A.2(20) (2019). In other words, the legislative amendment narrowed the definition from broad concepts of intent and action to more specific acts that demonstrate that intent. After all, it is unlikely that a parent resisting termination of parental rights will concede to having an intent to abandon a child. *Cf. State v. Query*, 594 N.W.2d 438, 444 (Iowa Ct. App. 1999) (noting that there is rarely direct proof of criminal intent). We must instead look to the parent's actions because we generally assume that people intend "the natural and probable consequences that ordinarily follow from their voluntary acts.'" *Hittle v. Hester*, 2009 WL 1676904, at *2 (Iowa Ct. App. June 17, 2009) (citation omitted). Furthermore, section 600A.8(3)(c) does not prohibit the court from considering a parent's intent; it only prohibits the court from determining that a parent has not abandoned a child based solely on the parent's subjective intent without taking the parent's acts into account.[3] *See In re W.N.*, No. 15-0176, 2015 WL 6087624, at *2 (Iowa Ct. App. Oct. 14, 2015).

The custodian also challenges the portion of the court's ruling that distinguished prior precedent regarding incarcerated parents. She cites *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993), which states that parents "cannot use [their] incarceration as a justification for [their] lack of relationship with the child. This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child." The custodian

---

[3] Presumably, the court would be justified in determining a parent has abandoned a child based on that parent's subjective intent. But it would be unusual for a parent to admit abandonment but still resist a termination action.

also cites *C.A.V.*, 787 N.W.2d at 101-02, in which this court found a father "made a conscious choice to engage in crimes, resulting in his convictions and incarceration, at the expense of building a relationship with his [child]."

The district court found that the statements made in *M.M.S.* and *C.A.V.* are inapplicable because the father's incarceration "has not prevented his efforts to establish a relationship and have contact with the child. On the contrary, in spite of his incarceration, [the father] has demonstrated his commitment and willingness to establish a relationship with and to assume custody of the child since he learned of the pregnancy." The court recounted these efforts, which include attempting to establish paternity before the child's birth, seeking visitation while in prison, requesting to be placed on the child's birth certificate, writing letters to the child, and completing parenting courses while incarcerated. The court also noted that the father continued his efforts after his release on parole by securing housing and employment, sending financial support for the child, and beginning therapy.

We agree that the facts before us are distinguishable from those set out in *M.M.S.* and *C.A.V.* In those cases, the fathers used their incarceration to justify their lack of relationship with their children. *See M.M.S.*, 502 N.W.2d at 6 (noting the father claimed association with his child was impossible due to his incarceration); *C.A.V.*, 787 N.W.2d at 99 (noting the father refrained from contacting his child while in prison from 2006 to 2009). Here, the father has made every attempt to establish a relationship with his child in spite of his incarceration.

It is difficult to find the father abandoned the child when he sought to establish his paternity before the child was born and sought visitation with the child thereafter.[4]

Finally, the custodian contends the district court failed to apply the factors set forth in section 600A.8(3)(a)(2) in determining whether the father abandoned the child. That section lists a number of factors the court "may" consider in determining whether to terminate parental rights for abandonment. Iowa Code § 600A.8(3)(a)(2). The use of the word "may" in a statute usually indicates it is permissive. *See Kopecky v. Iowa Racing & Gaming Comm'n*, 891 N.W.2d 439, 443 (Iowa 2017); *see also* Iowa Code § 4.1(30)(c) (stating that "[u]nless otherwise specifically provided by the general assembly," the word "may" when used in a statute confers a power). The court's failure to provide a detailed analysis of each factor listed in subparagraph (2) of section 600A.8(3)(a) does not equate to a failure to give them any consideration whatsoever. More importantly, the factors listed in subparagraph (2) are used only to determine whether the three factors listed in subparagraph (1) have been proved. As the court found,

> There can be little question that [the father] has done the three things he must do to overcome a presumption of abandonment. He has demonstrated a willingness to assume custody of the child, and not merely objected to the termination of parental rights. He promptly took and has relentlessly pursued action to establish a parental relationship with the child. He has demonstrated, through actions, a commitment to the child.

We agree that the evidence does not show the father abandoned the child.

---

[4] The father's incarceration did prevent him from providing financial support for the mother during her pregnancy or for the child. Although these factors may be considered in determining whether the criteria for termination under section 600A.8(3)(a) have been shown, the failure to provide support for a child is a separate ground for termination of parental rights if the parent has been ordered to provide support. *See* Iowa Code § 600A.8(4).

Because the custodian failed to establish the elements for termination under Iowa Code section 600A.8(3)(a), we need not consider the custodian's arguments concerning the child's best interests. *See In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018) (discussing two-step process for terminations under chapter 600A).

**AFFIRMED.**