# IN THE COURT OF APPEALS OF IOWA

---

No. 24-1967
Filed April 1, 2026

---

**State of Iowa,**
Plaintiff–Appellee,

v.

**Aaron Christopher Custer,**
Defendant–Appellant.

---

Appeal from the Iowa District Court for Union County,
The Honorable Stacy Ritchie, Judge.

---

**AFFIRMED**

---

J. Keith Rigg, Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney
General, attorneys for appellee.

---

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Ahlers, P.J.

**AHLERS, Presiding Judge.**

A jury found Aaron Custer guilty of four counts of child sexual abuse in the third degree. The victim in two counts was the older daughter of Custer's live-in girlfriend, the victim in a third count was the younger daughter of Custer's live-in girlfriend, and the victim in the final count was the female cousin of the two daughters.

Custer challenges his convictions on appeal, raising one issue. He contends the district court erred by admitting the testimony of two witnesses. The two witnesses are twin brothers. They testified that they were neighbors of Custer in a different state when they were young boys nearly twenty years earlier. Though Custer is about twenty years older than the twins, the twins used to spend the night at Custer's house. Each testified that, on separate occasions, when they were about ten years old, Custer sexually abused them by reaching into their pants and fondling their penises when they were sleeping. Custer contends he should receive a new trial because the twins' testimony should have been excluded as improper bad-acts evidence under Iowa Rule of Evidence 5.404(b).

## I.    Background Facts

The State presented the following evidence at trial. A mother and her two daughters moved in with Custer shortly after the mother and Custer started dating. At the time, the daughters were about ten to thirteen years old. The older daughter routinely slept in the same bed with her mother and Custer. Custer slept in the middle, and the mother slept on the edge of the bed so she could get up for work in the morning without disturbing the other two. After the mother left for work, Custer would touch the older daughter in a sexual manner. The abuse included Custer touching her breasts and

genitals, putting his mouth on her genitals, forcing her to stroke his penis, and forcing his penis into her vagina multiple times.

The younger daughter testified that Custer had done similar things to her. Once, when she was sleeping in her mom and Custer's bed, he touched her breasts, "groomed" her genitals, and inserted his fingers into her vagina. The mother was not in the bed when this occurred.

The daughters' cousin testified that Custer had touched her inappropriately once when she was staying overnight. She was sleeping on the couch with Custer sleeping on the floor right next to her. She woke up to Custer groping her breasts, and then he began sliding his hand down toward her genitals. When his hand was halfway past her belly button, she moved it back to her stomach, rolled over to her stomach, and fell back asleep. She was twelve at the time.

The State also presented the testimony of the twin brothers previously described, which is the evidence Custer challenges on appeal.

## II.    Standard of Review

Our review of evidentiary rulings is for abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). "A district court abuses its discretion when it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable . . . [or] if it bases its conclusions on an erroneous application of the law." *Id.* (alteration in original) (quoting *Stender v. Blessum*, 897 N.W.2d 491, 501 (Iowa 2017)).

## III.    Analysis

Rule 5.404(b) governs admission of evidence relating to a defendant's prior bad acts. The relevant portion of the rule states:

(1) *Prohibited uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted uses.* This evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Iowa R. Evid. 5.404(b). This is a rule of exclusion, meaning evidence of prior bad acts is excluded unless the party offering the evidence establishes a noncharacter theory for admitting it. *Thoren*, 970 N.W.2d at 625.

Given the risk that evidence of prior bad acts will be used for an improper purpose, our law requires courts to do a three-part analysis to determine whether to admit such evidence. *Id.* at 626. First, the evidence must be relevant to a legitimate, disputed fact. *Id.* Second, there must be clear proof the defendant engaged in the act. *Id.* Finally, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Id.* We examine each part in turn.

## A.    Relevance

The party trying to admit evidence over a rule 5.404(b) objection must "articulate a tenable noncharacter theory of logical relevance" connecting the evidence to a disputed fact. *Id.* at 626 (citation omitted). The rule gives a nonexclusive list of examples of permitted uses, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

The State contends that the twins' testimony proved sexual intent, absence of mistake, and lack of accident. To assess these contentions, some additional factual background is in order.

The State presented evidence at trial that both Custer's girlfriend and her younger daughter separately confronted him. Each confrontation resulted in different excuses from Custer.

When the mother confronted Custer about touching her niece (her daughters' cousin) while she was sleeping on the couch, Custer claimed he was just covering her with a blanket, suggesting that any touching was not sexually motivated and was the result of an accident or mistake. When the mother asked about him touching her younger daughter, Custer claimed that he thought he was touching the mother, again suggesting that it was an accident or mistake that he was actually touching the younger daughter.

When the younger daughter confronted Custer, he denied that anything occurred and claimed she must have dreamed the abuse. Custer's response implied that the younger daughter mistook a dream for actual contact.

Custer contends that his defense at trial was a general denial that sexual contact occurred, so there was no dispute about intent, mistake, or accident about which the twins' testimony would be relevant. Other criminal defendants have claimed a fact is not disputed when their defense was a general denial of the incidents and the noncharacter purposes supporting admission were raised through the State's evidence. We have rejected such claims because rule 5.404(b) does not require the factual dispute to be part of the defendant's theory of defense. *See State v. Puga*, No. 20-1184, 2021 WL 5106042, at *3 (Iowa Ct. App. Nov. 3, 2021) (finding no abuse of discretion in admitting evidence of prior bad acts even when the State's witness created the question of accidental or mistaken contact because rule 5.404(b) only requires that the evidence be relevant to a disputed fact, not that the evidence be used to rebut the defense's theory); *State v. Weltman*, No. 20-0860, 2021

5

WL 2768910, at *6 n.3 (Iowa Ct. App. June 30, 2021) (same); *State v. Daugard*, No. 06–0537, 2007 WL 1062867, at *3 (Iowa Ct. App. Apr. 11, 2007) (finding no abuse of discretion in admitting evidence of prior bad acts to rebut a claim of mistake or accident a defendant made in statements to law enforcement when confronted with the allegations). It only requires that the evidence be relevant to a disputed fact.

Like the district court, we find that the evidence of Custer's statements when confronted with the allegations created a dispute as to the nature of the contact because Custer suggested there was no sexual intent, the contact was done by accident, or the contact was done by mistake.[1] The twins' testimony that Custer had done something similar to them under similar circumstances is relevant because it makes it less likely that his contact with the girls was done for a nonsexual purpose, was an accident, or was a mistake. *See* Iowa R. Evid. 5.401; *Thoren*, 970, N.W.2d at 634(finding evidence of prior sexual assaults during traditional massages sufficiently

---

[1] Custer argues that intent cannot be a noncharacter purpose for admitting the twins' testimony because the type of third-degree sexual abuse with which he was charged is a general intent crime, so intent did not need to be proven and was therefore not an issue. A similar argument was rejected in *Puga*. There, the court noted that third-degree sexual abuse requires performance of a sex act. *Puga*, 2021 WL 5106042, at *3. To determine whether a sex act occurred, the jury was instructed to "consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature." *Id.* The court found "the fact that Puga assaulted another teenage girl under similar circumstances . . . makes it more likely that his conduct with [the victim] was sexual in nature and less likely that his hug of [the victim] had an innocent or non-sexual purpose or that it was accidental." *Id.* Here, Custer was also charged with third-degree sexual abuse, and the jury was given the same instruction about what to consider in deciding whether the contact was sexual in nature as the jury in *Puga*. *See id.* As it was in *Puga*, Custer's prior similar contact makes it less likely the contact in question was nonsexual, an accident, or a mistake. *See id.* Therefore, the twins' statement was relevant to prove the sexual nature of the contact.

similar to the alleged sexual contact in a Reiki massage such that evidence of prior assaults could be used to rebut evidence of mistake). The twins' testimony was relevant to a disputed fact.

## B. Clear Proof

Next, we must determine whether there was clear proof of Custer's prior acts with the twins. Clear proof cannot be established by mere speculation or hearsay but "[t]estimony of credible witnesses can satisfy the clear-proof requirement." *Thoren*, 970 N.W.3d at 262 (alteration in original) (quoting *State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014)).

Here, the twins testified about Custer's sexual abuse of them. This testimony is sufficient to meet the clear-proof requirement. *See State v. Jones*, 464 N.W.2d 241, 243 (Iowa 1990) ("Because the victim's testimony constituted clear proof of the prior instances of sexual abuse, the district court did not abuse its discretion when it refused to exclude the testimony.").

## C. Balancing Probative Value Against Unfair Prejudice

Finally, evidence that is relevant to a noncharacter factual issue can still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Thoren*, 970 N.W.2d at 635. We consider several factors in making this determination, including

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Id.* (citation omitted). This process "is not an exact science so we generally give a great deal of leeway to the trial judge who must make this judgment call." *Id.* (cleaned up).

Here, there was a need for the evidence because the evidence of Custer's statements in response to being confronted with the sexual-abuse allegations suggested any contact was nonsexual in nature, was accidental, or was the result of a mistake. The twins' testimony was important to rebut Custer's suggested explanations.[2] *See State v. Query*, 594 N.W.2d 438, 444 (Iowa Ct. App. 1999) (finding the State needed prior-bad-acts evidence to show intent and rebut claims the acts were innocent or accidental); *Puga*, 2021 WL 5106042, at *4 (finding the defendant's general denial of improper contact despite eye witness testimony increased the State's need for prior-bad-acts evidence).

Also, the evidence of the sexual abuse of the twins was fairly strong. While the abuse occurred over twenty years earlier, remoteness generally affects the weight of the evidence rather than its admissibility. *See State v.*

---

[2] Custer argues for the first time on appeal that two of the four counts of third-degree sexual abuse should have been severed and tried separately because the issues of mistake or accident were only raised in regard to the incidents with the younger daughter and cousin. Therefore, Custer contends the twins' testimony, if it is admissible, is only admissible as to the counts involving the younger daughter and cousin, and it was unfairly prejudicial to allow the jury to consider the evidence in deciding the two counts relating to the older daughter. Because Custer raises this issue for the first time on appeal, he has failed to preserve error on the issue, and we do not address it. *See State v. Clark*, 464 N.W.2d 861, 864–65 (Iowa 1991) (declining to decide whether severance should be granted on appeal when the defendant made pretrial motions to sever but failed to renew said motions during trial); *State v. Belieu*, 288 N.W.2d 895, 899–900 (Iowa 1980) (finding a defendant must alert the court to prejudice that arises during trial after the court rejected a pretrial motion to sever to preserve error on the issue).

*Casady*, 491 N.W.2d 782, 785 (Iowa 1992). And while the abuse of the twins involved young boys rather than young girls, the prior act and the charged act need not be similar in every respect. *See Thoren*, 970 N.W.2d at 634–35 (finding the challenged evidence relevant due to the unique nature of the case despite significant differences between the prior conduct and the conduct in question). It must only be similar enough that "a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [the person] knew of the proffered evidence." *Putman*, 848 N.W.2d at 9 (alterations in original) (quoting *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988)). Although the abuse of the twins is different in some ways in comparison to the abuse of the girls at issue here, they are similar in several ways. In particular, both the abuse of the twins and the abuse of the girls occurred when the children were around the same age, slept near or in the same bed as Custer, and woke up to him sexually abusing them. Given these similarities, the testimony from the twins was relatively strong.

Finally, we find no basis to conclude that the twins' testimony would inflame the jury such that it would be prompted to decide the case on an improper basis. The testimony was "concise, direct, and noninflammatory, and of a nature similar to that in the underlying charge" so it was not likely to incite "overmastering hostility" toward Custer. *See Puga*, 2021 WL 5106042, at *5 (quoting *State v. Reyes*, 744 N.W.2d 95, 100 (Iowa 2008)).

The court also mitigated the likelihood the twins' testimony would be used improperly by giving a limiting instruction three times—before and after the twins' testimony and before the jury deliberated. The repeated instruction reduced the likelihood that the jury would use the evidence for an improper purpose. *See State v. Plain*, 898 N.W.2d 801, 815 (Iowa 2017) (noting jury instructions mitigate the prejudicial impact of evidence).

In short, the court did not abuse its discretion in admitting the twins' testimony.

## IV. Conclusion

The challenged testimony was relevant to the disputed issues of intent, accident, and mistake; there was clear proof that the events described in the testimony occurred; and the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. Therefore, the district court did not abuse its discretion in admitting the evidence.

**AFFIRMED.**