Edward McCONNELL, Jr., Edward
McConnell, Sr., and Shirley
McConnell, Appellants,

v.

ALUMINUM COMPANY OF AMERICA,
A Corporation, Appellee.

No. 84–867.

Supreme Court of Iowa.

April 17, 1985.

Michael G. Reilly of Perkins, Sacks & Hannan, Council Bluffs, and Dwight W. James, Roxanne Barton Conlin, and Dennis P. Ogden of James & Galligan, P.C., Des Moines, for appellants.

Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, and Monte Belot of Hall, Levy, Lively, Viets & De Vor, Coffeyville, Kansas, for appellee.

Considered by UHLENHOPP, P.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

WOLLE, Justice.

During the second day of jury deliberations in this personal injury case the jurors presented to the trial court a series of written questions. After consulting with counsel the court responded to the questions in writing, and thereafter the jury returned special verdicts on which judgment was entered for defendant Aluminum Company of America (Alcoa). The trial court refused to set aside judgment entered pursuant to the jury's special verdicts, finding no prejudicial error had been committed. We affirm.

Plaintiffs Edward McConnell, Jr., Edward McConnell, Sr., and Shirley McConnell (McConnells) commenced a products liability action against Alcoa and several other defendants, seeking damages for injuries sustained by Edward, Jr. when a bottle cap burst off a bottle he was attempting to open and struck him in the face. The McConnells alleged causes of action based on theories of negligence, gross negligence, and strict liability against Alcoa, which had manufactured the bottle cap, and others in the distribution line. By the time the case had been tried and submitted to the jury, all defendants except Alcoa had been dismissed from the action. The court submitted the case against Alcoa to the jury on special verdicts consisting of fourteen "interrogatories."[1] Questions concerning Alcoa's liability to the McConnells on their alternate theories of strict liability and negligence were addressed in the first four interrogatories:

---

1. The special verdicts utilized by the court in this case should be distinguished from jury interrogatories which may appropriately be used in connection with a general verdict. Special verdicts, authorized by Iowa Rule of Civil Procedure 205, provide a method for having the jury verdict "consist wholly of special written findings on each issue of fact," with no general verdict returned by the jury. Interrogatories, authorized by rule 206, provide a method for having the jury answer particular questions of fact when a general verdict is also to be reached. In order to avoid confusion, a special verdict should not be called an interrogatory.

SPECIAL VERDICT FORM

We, the Jury, find the following special verdict on the issues submitted to us:

*Interrogatory No. 1:* Is Alcoa strictly liable?

Answer "yes" or "no"

ANSWER: _____

(If your answer to Interrogatory No. 1 is "no," do not answer Interrogatory No. 2.)

*Interrogatory No. 2:* Was the defect a proximate cause of injury or damage to the Plaintiffs?

Answer "yes" or "no"

ANSWER: _____

*Interrogatory No. 3:* Was Alcoa negligent?

Answer "yes" or "no"

ANSWER: _____

(If your answer to Interrogatory No. 3 is "no", do not answer Interrogatory No. 4.)

*Interrogatory No. 4:* Was the negligence of Alcoa a proximate cause of the injury or damage to the Plaintiffs?

Answer "yes" or "no"

ANSWER: _____

To assist the jury in answering those four special verdicts, Instruction No. 17 provided:

> If you have answered "yes" to Interrogatory No. 1 and Interrogatory No. 2 or to Interrogatory No. 3 and Interrogatory No. 4, or to all four of such interrogatories, you should proceed to determine the amount of damages sustained by the plaintiffs Edward McConnell, Jr. and Shirley McConnell.

During the second day of its deliberations, the jury presented a series of four hand-written questions to the trial court, the last two of which asked:

> On inst. No. 17 we answered yes to only one interrogatory, do we proceed to Interrogatory No. 5 or omit and go on.

> Inst. No. 17. If we answer yes to only one of the interrogatory questions should we determine amount of damage sustained or should we skip Inst. No. 18 and go to Inst. No. 19.

(Instruction 18 was the quotient verdict instruction, and instruction 19 was the first of several instructions concerning damage issues only.)

Upon receiving those two questions from the jury, the trial court conferred with counsel for the parties to determine what responses would be most appropriate. Counsel for McConnells first agreed with the court's suggestion that it inquire of the jurors whether they had answered the first four special verdicts and, if so, what were their answers. When such an inquiry had been prepared, however, McConnells' attorney objected to such an inquiry on the ground that the jury was confused and might not understand that one "yes" and three "no" answers to the first four special verdicts would require entry of a judgment for Alcoa. The court nevertheless submitted its inquiry in writing, and the jury responded as follows:

> Members of the Jury:
>
> With respect to your last two questions, the Court inquires of you as follows:
>
> Have you answered Interrogatory Nos. 1, 2, 3, and 4?   yes
>
> If so, please indicate your answers to each of those Interrogatories below.

| | |
|---|---|
| Interrogatory No. 1. | No |
| Interrogatory No. 2. | Skipped as instructed |
| Interrogatory No. 3. | Yes |
| Interrogatory No. 4. | No |

The jurors' answers to interrogatories one and two indicated that they had found for Alcoa on the strict liability claim. By their answers to interrogatories 3 and 4, the jurors indicated that although Alcoa had been negligent, that negligence was not a proximate cause of McConnells' damages. After conferring again with counsel, and after plaintiffs' counsel again voiced essentially the same objection, the court directed the jurors to indicate on the special verdict form their answers to the first four interrogatories and sign the form. When the jurors by written question then inquired whether they should before signing the special verdicts also answer interrogatories

5 through 14 pertaining to damage issues, the trial court answered:

Members of the Jury:

You should not answer Interrogatories 5 through 14. You should sign the final page and return the Instructions and Special Verdict Form to the Bailiff.

The jury then signed and returned the special verdict form finding that Alcoa was not strictly liable and that its negligence was not a proximate cause of plaintiffs' damages. Judgment for Alcoa was entered accordingly.

McConnells filed a motion for new trial contending that the trial court's communications with the jury constituted prejudicial error. On appeal from the denial of their new trial motion, McConnells characterize the court's communications as erroneous in three respects: (1) that the court improperly directed a verdict for Alcoa; (2) that the court improperly communicated with the jury; and (3) that the court improperly coerced the jury to return the special verdicts favoring Alcoa.

I. *Scope of Review.*

■■■ We allow a trial court broad but not unlimited discretion in ruling upon motions for new trial and will only reverse its determination upon a finding that it has abused its discretion. Iowa R.App.P. 14(f)(3); *see Thomas Truck and Caster Co. v. Buffalo Caster & Wheel Corp.,* 210 N.W.2d 532, 536 (Iowa 1973). When misconduct is asserted as a ground for a new trial, it must appear from the record that the misconduct caused prejudice to the moving party or that a different result would have been probable but for such misconduct. *Laguna v. Prouty,* 300 N.W.2d 98, 102 (Iowa 1981) (refusal of court to instruct jury not to consider insurance coverage not a ground for mistrial); *Yeager v. Durflinger,* 280 N.W.2d 1, 8 (Iowa 1979) (statements of plaintiff's counsel during closing arguments allegedly ridiculing defense counsel not prejudicial).

II. *Was the Court's Conduct the Equivalent of a Directed Verdict?*

■■■ McConnells contend that the jury had not completed its deliberations when the trial court elicited answers to the special verdicts, and therefore the court's actions had the effect of directing a verdict for defendant. They argue that the court's conduct forced the jury to render a verdict prematurely and thereby amounted to a judicial ruling as a matter of law in favor of Alcoa. *See* Iowa R.Civ.P. 216. The direction of a verdict in this case would have constituted error because the evidence generated factual questions for jury determination on the issues of strict liability, negligence and proximate cause. *See* Iowa R.App.P. 14(f)(10).

The actions taken by the court in response to the jury's handwritten questions cannot fairly be characterized as the directing of a verdict. Both the court and counsel for the parties recognized immediately upon receiving the questions that the jury had probably resolved the question of liability in favor of Alcoa, had completed its deliberations on liability issues, and was ready to proceed to the damage special verdicts but did not know if that was necessary. The following dialogue is instructive:

THE COURT: The court upon considering such questions believes that the situation in the jury room with respect to answers which have been made to the Interrogatories is not altogether clear; however, it appears ... that the Jury has answered "yes" to only one of these Interrogatories.... If that be the case, there would be no finding of liability on the part of the Defendant in this case.

It is the Court's suggestion that in response to the last two questions ... that the Court inquire of the Jury as to whether or not they have answered each of the first four Interrogatories, and, if so, indicate to the Court their answers to such Interrogatories. When such information is received from the Jury, the Court would then proceed further with respect to the direction as to further

deliberations or answers to subsequent interrogatories.

[McCONNELLS' ATTORNEY]: [T]here is only one thing we can do at this point, that is, directly ask them if they have answered the four questions, and see what the answers are because *we are at an impasse. If one is going to be "yes", it is over with, and it appears that is already what they have answered.* But beginning at that point there is nothing else we can do. *There is no sense having them in there on "hold".* We have got to find out what they did with the first four questions.

[ALCOA'S ATTORNEY]: Defendants are in agreement with that procedure. (Emphasis added.) McConnells' attorney understood .that if the jury had answered "yes" to only one of the first four special verdicts, Alcoa would be entitled to judgment in its favor. He initially concurred with the court's suggestion that if that were the case, no purpose would be served by requiring the jury to continue deliberating. The parties and the court recognized what the record clearly shows; the jury had already resolved the critical factual issues posed in the first four special verdicts pertaining to liability.

Moreover, the court in its initial response to the jurors' questions preceded its inquiry about how they had answered special verdicts one through four by inquiring whether they had answered those special verdicts. The jury answered "yes." We find no merit in McConnells' assertion that the court prematurely curtailed deliberations and improperly directed a verdict for Alcoa.

### III. *Propriety of the Court-Jury Communication.*

■ McConnells also contend that the trial court's responses to the jury's questions during deliberations were improper communications which constituted an abuse of the court's discretion to assist the jury with further instructions during deliberations. *See* Iowa R.Civ.P. 197:

> While the jury is deliberating, the court may in its discretion further instruct the jury, in the presence of or after notice to counsel. Such instruction shall be in writing, be filed as other instructions in the case, and be a part of the record and any objections thereto shall be made in a motion for a new trial.

The McConnells emphasize that jury deliberations are sacrosanct, noting that in *Daniels v. Bloomquist,* 258 Iowa 301, 138 N.W.2d 868 (1965) this court said:

> In order that the institution of jury trials be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted, not only from all improper influences, but from the appearance thereof.... [A] communication by the judge to the jury stands on a different basis from that of any other person, and for a like reason the law should throw a higher degree of circumspection around such communications.

*Id.* at 306–07, 138 N.W.2d at 872.

*Bloomquist,* however, is distinguishable on its facts. There, the trial court sent the bailiff to the jury room and removed the foreman for five to seven minutes for a private visit with the court. The foreman on his return informed the jurors that they would have to reach a verdict, and a verdict was returned fifteen minutes later. *Id.* at 305–06, 138 N.W.2d at 871–72. We reversed and remanded for a new trial because the trial court's private communication with one juror had been improperly initiated by the court, the communication was outside the presence of counsel, and the likely effect was to taint the deliberations of the jury. Here, in contrast, the court's communications were each in response to questions from the jury, presented in writing to all jurors and formulated only after consultation with counsel for all parties.

We find that the trial court exercised sound discretion in determining first whether the jury had arrived at conclusive special verdicts on the issue of Alcoa's liability, and only then ascertaining by written questions what those verdicts were. The court's conduct neither tainted the pro-

cess of jury deliberations nor gave the appearance of impropriety.

■ We also find merit in Alcoa's contention that the McConnells have not shown they were prejudiced by the court's conduct. McConnells' principal objection to the manner in which the trial court chose to respond to the jury's questions was that the court did not explain to the jurors what would be the effect of their special verdict answers. McConnells' counsel asked the court to "advise the jury that in the event they only have one 'yes' answer to the first four [special verdicts], they have rendered a defense verdict." McConnells' objection is without merit. In a special verdict submission like that used in this case, the jury need be instructed only insofar as is necessary for it to make the required factual findings. It is for the court, not the jury, to enter the general verdict and judgment for one party or another based on the jury's factual determinations. *See Poyzer v. McGraw*, 360 N.W.2d 748, 753 (Iowa 1985). It would have been improper for the trial court to advise the jury concerning what would be the ultimate resolution of issues on which it was making specific findings, just as it is commonly thought to be inappropriate in a special verdict submission for counsel to direct the jury's attention to the impact of any specific findings. *Id.* at 753. "A special verdict is in lieu of a general verdict, and its design is to exhibit all the ultimate facts, and leave the legal conclusions entirely to the court. *Sparks v. Long*, 234 Iowa 21, 26, 11 N.W.2d 716, 719 (1943); *see generally* Note, *Judicial Discretion in the Use of Special Verdicts*, 37 Iowa L.Rev. 95, 104–05 (1951) (advocating more frequent use of special verdicts).

The trial court did not abuse its discretion in denying McConnells' objection to the form of its responses to the jurors' questions, and no prejudicial error resulted from the court's communications with the jury.

### IV. *Was the Court's Communication a Verdict-Urging Instruction?*

■ McConnells' final contention is that the trial court's responses to the jury's hand-written questions constituted a verdict-urging instruction which improperly coerced a verdict. They point out that the court's final direction to the jury to complete and sign the verdict form gave the jury no option but to end its deliberations and return its special verdicts, regardless whether the jurors wished to continue deliberating. We disagree.

First, we do not find in the trial court's written communications to the jury any element of coercion. The court's initial response to the jury commenced with the question: "Have you answered Interrogatory Nos. 1, 2, 3, and 4?" The jury answered "yes." Only then did the jurors give the court in writing their answers to those four special verdicts. Because the jury by its response told the court that it had completed its deliberations on the issues covered by the first four special verdicts, the jury's consideration of this case was not prematurely terminated.

■ The ultimate test for determining the propriety of a verdict-urging instruction is whether the instruction improperly coerced a verdict or merely initiated a new train of real deliberation which terminated the disagreement. *State v. Campbell*, 294 N.W.2d 803, 808 (Iowa 1980). Reversal is in order only when the surrounding circumstances demonstrate prejudice. *Id.* at 809.

We conclude that the court's communications with the jury in this case did not improperly coerce the jurors into rendering their special verdicts. The record fully supports the trial court's determination that the jury had already answered the factual questions on its own before the court asked the jurors to complete and sign the special verdict form and return with it into court.

The trial court did not err in denying McConnells' motion for new trial.

AFFIRMED.