**STATE of Iowa, Plaintiff–Appellee,**

v.

**Dwight Tyrone McCALL, Defendant–Appellant.**

No. 07–0763.

Court of Appeals of Iowa.

May 29, 2008.

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Dwight Tyrone McCall, pro se.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Michael J. Walton, County Attorney, and Amy K. Devine, Assistant County Attorney, for appellee.

Considered by SACKETT, C.J., and HUITINK and MAHAN, JJ.

SACKETT, C.J.

Defendant, Dwight Tyrone McCall, was convicted following a jury trial of criminal mischief in the first degree, in violation of Iowa Code sections 716.1 (2005) and 716.3, and burglary in the third degree, in violation of Iowa Code sections 713.1 and 713.6A. On appeal he contends the trial court erred by revising two jury instructions in response to a question submitted by the jury during deliberations. We affirm.

## I. BACKGROUND AND PROCEEDINGS.

In August of 2006, Dwight McCall and his wife Dalila were in the process of obtaining a divorce. A protective order was in place and Dalila was living in the home with their children. Dalila testified while she was at work on the evening of August 8, 2006, McCall called her and asked if he could stay in their home to which she replied no. When Dalila arrived home after work, she noticed the back door was open, most of the furniture in the home was destroyed, and water was leaking from the ceiling.

Dalila called the police and an officer arrived to investigate. The officer testified the refrigerator door was ripped off and furniture was tipped over with the legs broken off. Upstairs, a water bed had been slashed open and the smell of bleach permeated the area. The ceiling downstairs collapsed from the weight of the water spilling from the water bed. There was no damage to the children's rooms. Dalila received a phone call while the officer was there and she confirmed to the officer McCall was the caller. McCall apparently made incriminating statements during the call although at trial, McCall presented witnesses who testified that he was at a different residence on August 7 and 8 of 2006.

McCall was charged with criminal mischief in the first degree and burglary in the second degree and a jury trial was held on March 26 and 27, 2007. The court provided proposed instructions and a few changes were made at the attorneys' requests. Instructions 15 and 16 set forth the elements of burglary in the second degree and burglary in the third degree. Both instructions required the State to prove "the Defendant broke into the residence" and "did not have permission or authority to break into the residence." Instruction 17 provided the elements of the lesser included offense of trespass and required the State to prove "the defendant entered the residence" without permission. Another instruction provided a definition of "to enter" but no definition of "to break" was provided. The court confirmed there were no objections to the final draft of instructions. During deliberations the jury submitted a question to the court asking, "If [McCall] received a key from other siblings and with restraining order

used key is this breaking and entering or would it be just trespassing?"

The trial judge conducted a hearing to determine how to respond to the question, allowing each attorney to provide an opinion. The State took the position that instructions 15 and 16 misguided the jury by not properly defining burglary. It argued burglary does not require a breaking and a proper instruction should state the defendant "broke into or entered the residence." McCall's attorney objected to any revision of the instructions and advised the jury should be told to reread the instructions. He claimed the State waived any right to object to the drafted instructions by failing to object to the instructions prior to deliberations. He stated the final draft instructions were accurate, though incomplete, and any revision would allow the State to present additional theories after the case was submitted to the jury. The judge determined the jury should be provided "a complete description of burglary" and revised the burglary instructions to provide the State had to prove "defendant entered or broke into the residence" without "permission or authority to enter the residence." The jury returned a verdict finding McCall guilty of burglary in the third degree and criminal mischief in the first degree. McCall appeals these convictions contending the court abused its discretion by revising instructions 15 and 16 in response to the jury's question.

## II. STANDARD OF REVIEW.

■■■ Challenges to jury instructions are generally reviewed for correction of errors at law. *See* Iowa R.App. P. 6.4; *State v. Lawler,* 571 N.W.2d 486, 489 (Iowa 1997). "We review the trial court's instructions 'to determine whether they correctly state the law and are supported by

substantial evidence.'" *State v. Walker,* 600 N.W.2d 606, 608 (Iowa 1999) (quoting *State v. Thompson,* 570 N.W.2d 765, 767 (Iowa 1997)). Yet, "'the decision to give a supplemental instruction, or to refrain from doing so, rests within the sound discretion of the trial justice.'" *State v. Watkins,* 463 N.W.2d 15, 18 (Iowa 1990) (quoting *State v. Pignolet,* 465 A.2d 176, 184 (R.I.1983)). "'A discretionary ruling is presumptively correct, and on appeal will be overturned only where an abuse of discretion has been demonstrated. An abuse is found only where the discretion is exercised on grounds or for reasons clearly unreasonable.'" *Id.* (quoting *Sheer Constr., Inc. v. W. Hodgman & Sons, Inc.,* 326 N.W.2d 328, 334 (Iowa 1982)). We therefore will review the trial court's decision to respond to the jury question for abuse of discretion and review the content of the revised instruction for correction of errors at law.

## III. ANALYSIS.

■■■ McCall first argues the State waived any right to challenge the instructions after submission to the jury. All objections to jury instructions are to be made before closing arguments, "[b]ut if the court thereafter revises or adds to the instructions, similar specific objection to the revision or addition may be made in the motion for a new trial." Iowa R. Civ. P. 1.924.[1] The State was permitted to raise its concerns regarding the instruction when the court solicited the attorneys' opinions on how to respond to the jury's question. Though there was no motion for a new trial, the court initiated the discussion about the instructions and the State properly responded to the court in providing its opinion on the burglary instruc-

---

1. "The rules relating to the instruction of juries in civil cases ... apply to criminal cases." Iowa R.Crim. P. 2.19(5)(*f*).

tions. McCall also argues the instructions originally given to the jury became the "law of the case." Additional issues are raised in McCall's pro se brief. These issues were not presented to the trial court and we cannot consider issues raised for the first time on appeal. *State v. Webb,* 516 N.W.2d 824, 828 (Iowa 1994).

McCall also contends the court abused its discretion because the revised instruction permitted the State to expand its theory of the case to include an entering alternative of committing burglary. "After the jury has retired for deliberation, ... if it desires to be informed on any point of law arising in the cause, ... the information required may be given, in the discretion of the trial court." Iowa R.Crim. P. 2.19(5)(*g*). "[T]he court may, at the request of the jury, give further instructions, since the interest of justice requires that the jury have a full understanding of the case." *State v. Martens,* 569 N.W.2d 482, 485 (Iowa 1997). "A number of courts have held that if the jury expresses confusion or lack of understanding of a significant element of applicable law, it is the court's duty to give an additional instruction." *Id.* Refusing to provide additional instructions may result in reversible error. *Id.*

 "The trial court has the duty to instruct the jury as to the law on all material issues supported by the evidence." Iowa R.Crim. P. 2.19(5)(*f*); Iowa R. Civ. P. 1.924. "Jury instructions are designed to explain the applicable law to the jurors so the law may be applied to the facts proven at trial." *State v. Bennett,* 503 N.W.2d 42, 45 (Iowa Ct.App.1993). Beyond the duty of instructing the jury, the trial court also has the duty to ensure the jury understands both the issues and the law it must apply. *Id.* Additional instructions must also be fair to both the defendant and the State and cannot prejudice the defendant. *See Watkins,* 463 N.W.2d at 18.

Generally, the decision to give a supplemental instruction, or to refrain from doing so, rests within the sound discretion of the trial justice, and he need not limit himself to answering questions from the jury. As long as the supplemental charge is "scrupulously fair to the defendant and to the state" and does "not infringe upon the fact-finding province of the jury by coercion or improper suggestion," the giving of a supplemental charge is not improper.

*Id.* (quoting *Pignolet,* 465 A.2d at 184).

In *State v. Query,* 594 N.W.2d 438 (Iowa Ct.App.1999), during a jury's deliberation in a sexual abuse trial, the jury requested a more detailed definition of "genitalia area." *Query,* 594 N.W.2d at 442. The court provided a dictionary definition that had been approved of in prior case law. *Id.* at 445. We found no abuse of discretion in the response to the jury because it was a correct statement of the law. *Id.* By contrast, in *State v. Watkins,* 463 N.W.2d 15 (Iowa 1990), our supreme court found a defendant was prejudiced by a trial court's revision of instructions during deliberations that added an alternative means of committing robbery because the defendant was deprived of the opportunity to address this theory in closing arguments. *Watkins,* 463 N.W.2d at 18.

In *Watkins,* the original jury instructions allowed the jury to find the defendant guilty of robbery if the defendant intended to commit a theft, was armed with a dangerous weapon, and in carrying out the theft "the defendant threatened [the victim] with, or purposely put [the victim] in fear of immediate serious injury." *Id.* at 17. After the jury had deliberated for over two hours, the judge gave it revised instructions on robbery. *Id.* at 16. The robbery instruction was changed to allow the jury to find the defendant guilty

if, in addition to having the intent to commit a theft and being armed with a dangerous weapon, the defendant either "a. *Committed an assault upon [the victim]; or* b. Threatened [the victim] with, or purposely put [the victim] in fear of immediate serious injury." *Id.* at 17. The means added in the revision has been referred to as the "assault alternative of robbery" and the statutory definition of assault is applied to a case's facts under this alternative. *See State v. Heard,* 636 N.W.2d 227, 230 (Iowa 2001). There are multiple ways one can commit assault under the statute.[2] Adding the assault alternative to the robbery instructions in *Watkins* added multiple ways the jury could find the defendant committed robbery and thereby allowed the State to add a theory after the case was submitted for deliberation. Prior to revision of the instructions in order to convict, the jury in *Watkins* had to find the defendant threatened the victim with immediate serious injury or purposely put the victim in fear of immediate serious injury. *Watkins,* 463 N.W.2d at 17. Adding the assault alternative allowed the jury to convict if it only found the defendant intended his act to put the victim "in fear of immediate physical contact" rather than in fear of serious injury. *See* Iowa Code § 708.1(2). The assault alternative also goes beyond threats of serious injury and includes "physical contact which will be insulting or offensive to another." *See* Iowa Code § 708.1(1). The multiple methods of committing assault, along with its broader definition, expanded the State's

case in *Watkins.* The revision was prejudicial to the defendant because he was denied the opportunity to address the assault alternative theory in closing argument. *See Watkins,* 463 N.W.2d at 18.

■ The revision made by the trial court in this instance did not expand the State's theory of the case because the added "entering" language was legally synonymous with the original instruction containing the "breaking" language. The definitions "breaking" and "entering" under burglary law embody each other. Black's Legal Dictionary provides the definition of "breaking" is, "[i]n the law of burglary, the act of *entering* a building without permission." Black's Law Dictionary 201 (8th ed. 2004) (emphasis supplied). The judge's revised instruction clarified that breaking included any entry into the residence. Another element required a finding that the entry or breaking of the residence was without permission. The instruction did not add an alternative method of committing the offense and the instruction did not refer to any specific evidence or facts. The instruction was fair to both the prosecution and the defendant. Since the revised instruction merely clarified the law for the jury and provided a correct statement of the law, no abuse of discretion or error was committed.

**AFFIRMED.**

2. Iowa Code section 708.1 defines assault and provides in relevant part,

An assault as defined in this section is a general intent crime. A person commits an assault when, without justification, the person does any of the following:
1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting

or offensive to another, coupled with the apparent ability to execute the act.
2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.