# IN THE SUPREME COURT OF IOWA

No. 17–1934

Filed March 1, 2019

**MANDI MUMM,**

Appellant,

vs.

**JENNIE EDMUNDSON MEMORIAL HOSPITAL** d/b/a **METHODIST JENNIE EDMUNDSON HOSPITAL, EMERGENCY PHYSICIANS OF WESTERN IOWA, L.L.C.,** and **PAUL C. MILERIS,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Gregory W. Steensland, Judge.

Mandi Mumm seeks further review of a court of appeals decision affirming a district court's denial of her motion for a new trial. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Randall J. Shanks and Emily A. Shanks Warren (until withdrawal) of Shanks Law Firm, Council Bluffs, for appellant.

Michael W. Ellwanger and Laura L. Mommsen (until withdrawal) of Rawlings, Ellwanger, Mohrhauser, Nelson & Roe LLP, Sioux City, for appellee Jennie Edmundson Memorial Hospital.

Thomas J. Shomaker, Mary M. Schott, and Robert A. Mooney of Sodoro Daly Shomaker PC LLO, Omaha, Nebraska, for appellees Emergency Physicians of Western Iowa, L.L.C. and Paul C. Mileris.

**MANSFIELD, Justice.**

### I. Introduction.

This case raises the recurring question of how to respond to jury questions during deliberations.

An individual who had been confined in a halfway house suffered a disabling stroke. She sued both the halfway house and an attending emergency room physician at a nearby hospital. She alleged that the halfway house failed to get her needed medical attention and that the physician rendered negligent care, thereby leading to delayed detection and treatment of the stroke. Before trial, she settled with the halfway house and continued to pursue her claim against the physician. The halfway house was listed on the verdict form as a potential nonparty at fault.

During deliberations, the jury asked, "If we attribute 25% fault to [the physician] and 75% to [the halfway house] would [the plaintiff] only get 25% since [the halfway house] has been released?" The jury also asked, "If [the halfway house] has been released how [is it] still named in the lawsuit?" The district court answered both questions by directing the jury back to the original instructions, although those instructions did not explain the effect of any fault allocation. Thereafter, the jury returned a verdict that the physician was not negligent and, as advised by the verdict form, stopped there.

Appealing from a denial of her motion for new trial, the plaintiff argues that the district court should have answered "yes" to the jury's first question. The court of appeals found no abuse of discretion and affirmed. On further review, we likewise find no abuse of discretion. Although the district court could have—and probably should have—given an affirmative answer to the first question, we are unable to find any prejudice on this

record. The jury surely understood that its verdict would result in *no* damages being awarded against the physician; therefore, any jury confusion as to whether an award of *some* damages would be reduced was immaterial. Furthermore, the plaintiff has not provided us with a transcript of any portion of the trial, making it even more difficult to find potential prejudice. Accordingly, we affirm the decision of the court of appeals and the judgment of the district court.

## II. Facts and Procedural History.

Because no transcript was ordered of the jury trial, our summary of the facts is necessarily somewhat limited. Mandi Mumm's appellate brief cites to her petition, not to the trial record, for factual support.

Nonetheless, some facts appear to be undisputed. In early 2014, when she was thirty-three years old, Mumm was released from federal prison into a halfway house operated by CH, Inc. under a contract with the Federal Bureau of Prisons.

On February 11, 2014, Mumm became ill and received permission to go to a clinic for medical care. She had complaints of headache, neck pain, and dizziness. Her diagnoses were headache and acute sinusitis. After being seen by the clinic and prescribed one medication, she returned to the CH halfway house.

On February 14, Mumm was still not feeling well and received permission to go to the emergency room of Jennie Edmundson Hospital in Council Bluffs. Mumm complained of a worsening of her headache, nausea, dizziness, and vomiting. She reported that she had a history of migraines. She was seen by an emergency room physician, Dr. Paul Mileris. Dr. Mileris ordered a CT exam of her head that was reported as normal. Mumm was treated with medication and released back to the halfway house.

Mumm's condition did not improve at CH. According to Mumm's petition, on February 16, she became very ill and began exhibiting signs of a stroke. She looked ill, she was sweating, her throat was swollen, she could not breathe, and the right side of her face was drooping. However, Mumm was not released by CH to return to the emergency room for approximately twenty-four hours.

On February 17, at approximately 10:30 p.m., Mumm arrived again at the emergency room. She was triaged at 10:40 p.m. and seen by Dr. Mileris at 11:29 p.m. An MRI of her brain was performed, and it was determined that she was suffering a cerebral stroke with vertebral dissection. She was transferred to the University of Nebraska Medical Center later in the morning where she remained hospitalized for approximately two months. Mumm remains confined today to a wheelchair and suffers bilateral paralysis.

On November 12, 2015, Mumm filed suit in the Pottawattamie County District Court against CH. The next day, she amended her petition to add Sidney Strnad, a supervisor at CH. On February 9, 2016, Mumm filed a motion to amend her petition to add Dr. Mileris, Emergency Physicians of Western Iowa, L.L.C. (Dr. Mileris's employer), and Jennie Edmundson Hospital as defendants. On July 25, Mumm dismissed CH and Strnad, having reached a settlement with them. On September 22, Mumm amended her petition a third time.

Jury trial commenced on August 28, 2017. By the time of trial, the parties had agreed there was no independent claim of liability against the hospital; its liability, if any, derived from that of Dr. Mileris.[1] Trial proceeded for eight days.

---

[1] At the risk of oversimplification, we shall refer to the remaining parties to the case collectively as "Dr. Mileris."

The case was submitted to the jury on September 8. The statement of the case had explained to the jury that Dr. Mileris denied any negligence and claimed that it was CH's negligence that caused injury to Mumm.

Instruction 22, the marshalling instruction, stated,

> In order for Mandi Mumm to recover against Dr. Paul Mileris, she must prove all of the following propositions:
>
> 1. That Dr. Mileris was negligent on February 14, 2014, for failing to use the degree of skill, care and learning ordinarily possessed and exercised by other emergency room physicians in similar circumstances.
>
> 2. That his negligence caused injury and damage to Mandi Mumm.
>
> 3. The amount of damages.
>
> If the Plaintiff has failed to prove any of these propositions, she is not entitled to damages. If the Plaintiff has proved all of these propositions, the Plaintiff is entitled to damages in some amount, and you will then compare the fault of Dr. Mileris with the fault of CH, Inc. as set out in Instruction No. 24.

Instruction 24 provided,

> The Defendants claim that CH, Inc. was at fault on February 15, 16 and 17, 2014, for delaying a transfer of Mandi Mumm to a hospital. Defendants must prove all of the following propositions.
>
> 1. CH, Inc. was at fault.
>
> 2. CH, Inc.'s fault was a cause of Plaintiff's damage, if any.
>
> If the Defendants have failed to prove either of these propositions, you cannot assign any percentage of fault to CH, Inc. If the Defendants have proved both of these propositions, then you will assign a percentage of fault against CH, Inc., and include CH, Inc.'s fault in the total percentage of fault found by you in answering the questions in the verdict form.

The verdict form stated,

> **QUESTION NO. 1:** Was Dr. Paul Mileris negligent?

Answer "yes" or "no."

ANSWER: _____

[If your answer is "no," do not answer any of the following questions.]

**QUESTION NO. 2:** Was the negligence of Dr. Paul Mileris a cause of any item of damage to Plaintiff?

Answer "yes" or "no."

ANSWER: _____

[If your answer to either Question No. 1 or No. 2 is "no," then you shall not assign any fault to Dr. Paul Mileris, and you will not answer any further questions.]

If the answer to both Questions 1 and 2 are yes, then you will answer the following questions.

**QUESTION NO. 3**: Was CH, Inc., negligent?

Answer "yes" or "no."

ANSWER: _____

[If your answer is "no," do not answer Question No. 4.]

**QUESTION NO. 4**: Was the negligence of CH, Inc., a cause of any item of damage to Plaintiff?

Answer "yes" or "no."

ANSWER: _____

[If your answer to either Question No. 3 or No. 4 is "no," then you shall not assign any fault to CH, Inc.]

**QUESTION NO. 5**: What percentage of the total fault do you attribute to Defendant, Dr. Paul Mileris and what percentage of the total fault do you attribute to CH, Inc.? The percentages must total 100%.

[If you previously found that Defendant Dr. Paul Mileris or CH, Inc., was not at fault, or did not cause damage to Plaintiff, then enter "0" after its name.][2]

---

[2]Questions 6 and 7 went on to ask the jury about items of damage.

Because the trial has not been transcribed, we do not know whether any objection was made to the jury instructions or special verdict forms. The most we can say is that our record does not indicate any objection.

At 2:01 p.m., after the jury was sent out to deliberate, the foreperson sent the following note to the court:

> 1. As related to Question 5: If we attribute 25% fault to Dr. Paul Mileris and 75% to CH, Inc. would Mandi only get 25% since CH has been released?
>
> 2. If CH, Inc. has been released how are they still named in the lawsuit?

According to Dr. Mileris, these questions came "near the start of [jury] deliberations." This fact is not disputed by Mumm.[3]

According to Mumm, after receiving the jury questions,

> The Court contacted trial counsel to discuss the questions and a response thereto. Counsel for the Plaintiff moved the Court to answer "Yes" to the first question and refer the jury to the previously given jury instructions to answer the second. Counsel for the Defendants requested that the Court refer the jury back to the jury instructions.

These facts are not disputed by Dr. Mileris. At this point, the court advised the jury to "[p]lease follow the instructions already given to you based upon the evidence presented at trial."

Later that afternoon, the jury returned a unanimous verdict finding that Dr. Mileris was not negligent and, therefore, declined to answer the remaining questions after Question 1. The verdict was filed at 3:56 p.m.

On September 15, Mumm moved for a new trial. She asserted that the jury was "clearly confused" when it sent its note to the court, that it was "trying to figure out a way to award [Mumm] 25% of her damages,"

---

[3]At oral argument, both counsel agreed that the jury was sent out to deliberate at approximately 12:30 p.m., presumably ordered and had lunch, and came back with their questions at 2:01 p.m.

and that the district court "should have answered 'Yes' to the jury's question to clear up this confusion." Dr. Mileris resisted the motion.

On November 6, the district court entered an order denying the motion for new trial. The court explained,

> During deliberation, the jury sent several questions to the Court. Plaintiff's post-trial motion focuses on one of those questions. The question asked this Court for further instructions concerning the potential for assessing a 25% fault to Dr. Mileris. It is Plaintiff's position that in order for the jury to get to that question and deliberate it, they must have necessarily answered questions 1-4 on the verdict form in the affirmative.
>
> While it makes some sense that subsequent questions shouldn't be or need not be discussed until question 1 is answered in the affirmative, it is not particularly realistic to think that juries don't discuss the whole package before going back and answering questions. This Court concludes that the question does not reflect confusion by the jury so much as it reflects a complete discussion of the case by all jurors. It would not be unusual for some jurors to want to discuss other questions in order to help them decide the case. Ultimately, this inheres in the verdict and in the discussions carried on by the jury. This Court finds no reason to set aside or interfere with the jury's judgment in this case.

Mumm appealed the denial of new trial, and we transferred her case to the court of appeals. The court of appeals affirmed the district court's ruling, with one member of the panel dissenting. We granted Mumm's application for further review.

### III. Standard of Review.

We review a trial court's response to jury questions during deliberations for abuse of discretion. *See* Iowa R. Civ. P. 1.925 ("While the jury is deliberating, the court may in its discretion further instruct the jury, in the presence of or after notice to counsel."); *State v. Watkins*, 463 N.W.2d 15, 18 (Iowa 1990) (noting that "the decision to give a supplemental instruction, or to refrain from doing so, rests within the sound discretion of the trial justice" (quoting *State v. Pignolet*, 465 A.2d 176, 184 (R.I.

1983))); *McConnell v. Aluminum Co. of Am.*, 367 N.W.2d 245, 250 (Iowa 1985) ("The trial court did not abuse its discretion in denying McConnells' objection to the form of its responses to the jurors' questions, and no prejudicial error resulted from the court's communications with the jury."); *see also State v. McCall*, 754 N.W.2d 868, 871 (Iowa Ct. App. 2008).

## IV.  Legal Analysis.

In this case, it appears that answering "yes" to the jury's first question during deliberations would have closed a gap in the original instructions.  The original instructions advised the jury that Mumm claimed Dr. Mileris was negligent and that Dr. Mileris claimed CH was negligent.  The jurors were also told that if they found Dr. Mileris negligent, and that his negligence was a cause of any item of damage to Mumm, they should proceed to determine whether CH was negligent and if so, whether CH's negligence was a cause of damage of any item of damage to Mumm.  Finally, they were told that if they answered yes to the foregoing questions, they should then attribute percentages of total fault to CH and Mumm.

However, Iowa Code section 668.3(5), regarding comparative fault, goes further.  It provides, "If the claim is tried to a jury, the court shall give instructions and permit evidence and argument with respect to the *effects* of the answers to be returned to the interrogatories submitted under this section."  Iowa Code § 668.3(5) (2017) (emphasis added); *see also Sullivan v. Wickwire*, 476 N.W.2d 69, 72–73 (Iowa 1991) (indicating that in a case with a settling defendant, the district court must instruct the jury that the plaintiff's recovery will be reduced by the percentage of fault attributed to the settling party).  The Iowa State Bar Association's model civil jury instructions state that when there is a settling party, the jury should be told, "If you assign a percentage of fault to the settling party, I will reduce the amount of plaintiff's recovery by that percentage."  Iowa State Bar

Ass'n, Iowa Civil Jury Instructions 400.3, n.5 (2018). Here, the court's original jury instructions did not explain how the math would work if some fault were allocated to Dr. Mileris and some to CH. The dissenting judge on the court of appeals noted this point, while also observing that Mumm had not raised section 668.3(5) on appeal.

There is authority that supplemental instructions can be used to cover holes in the original instructions:

> Where the original instructions are inadequate, and the jury asks questions indicating their confusion and need for further explanation, the failure to give proper additional instructions may be reversible error. Also, a court has a duty to further instruct the jury where the jury requests clarification, at least where the original instructions were incomplete or where the jurors indicate confusion.

89 C.J.S. *Trial* § 974, at 433 (2012) (footnote omitted); *see also Brown v. Lyon*, 258 Iowa 1216, 1222, 142 N.W.2d 536, 539 (1966) ("Supplemental instructions, of course, are as a general rule proper, and sometimes are necessary and desirable.").

However, it is well-settled that an instructional error must be prejudicial to warrant reversal. *Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 920 (Iowa 2017) ("[W]e will not reverse the district court's failure to give a requested jury instruction unless it prejudices the party requesting the instruction."); *Burkhalter v. Burkhalter*, 841 N.W.2d 93, 97 (Iowa 2013) ("Error in giving a jury instruction 'does not merit reversal unless it results in prejudice.'" (quoting *Wells v. Enter. Rent–A–Car Midwest*, 690 N.W.2d 33, 36 (Iowa 2004))); *Beyer v. Todd*, 601 N.W.2d 35, 38 (Iowa 1999) ("Failure to give a requested jury instruction does not warrant reversal unless it results in prejudice to the party requesting the instruction."); *Grefe & Sidney v. Watters*, 525 N.W.2d 821, 824 (Iowa 1994) ("If instructions are erroneous, they must be prejudicial before we will

order reversal."); *Ladeburg v. Ray*, 508 N.W.2d 694, 696 (Iowa 1993) ("Error in giving an instruction does not require reversal unless the error is prejudicial."). This applies also to supplemental instructions: to show an abuse of discretion, the plaintiff must demonstrate she was prejudiced by the response to the jury question. *See McConnell*, 367 N.W.2d at 250 (finding no abuse of discretion while noting that the appellants "have not shown they were prejudiced by the court's conduct [in responding to the jury questions]").

Although Iowa Code section 668.3(5) directs the court to inform the jury of the effects of its fault allocations, our prior reversals in this area have involved situations where the jury was affirmatively misled by the allocation instructions given. *See Reese v. Werts Corp.*, 379 N.W.2d 1, 3–4 (Iowa 1985) (finding that reversal was required where the district court failed to properly instruct the jury on the effect of its fault allocations and the plaintiff objected to the misleading instructions that were given); *see also Wilson v. Farm Bureau Mut. Ins.*, 714 N.W.2d 250, 261 (Iowa 2006) (noting that implicit in *Reese* was "the fact that the erroneous and misleading instructions tainted the jury verdict[] resulting in prejudice to the part[y] challenging the verdict[]"). We have yet to reverse a jury verdict simply because the jury was not told the effect of the allocation they were asked to make between a nonsettling defendant and a settling one. Normally, juries answering special verdicts are not told of the consequences of those answers: we trust jurors to find the facts impartially regardless of where those findings may lead. *See Schwennen v. Abell*, 471 N.W.2d 880, 885 (Iowa 1991).

In any event, we cannot find prejudice here. Mumm argues the first question illustrates that the jury was confused and wanted to award Mumm 25% of her damages against Dr. Mileris. The district court

concluded that the jury was having a preliminary discussion of the entire verdict form and simply wanted to make sure it understood the form before going through full-blown deliberations.  On the face of it, the district court's reasoning is more logical than Mumm's.  The district court's hypothesis can be reconciled with the actual jury verdict; Mumm's can't.  If the jury wanted to award *some* money to Mumm against Dr. Mileris, as Mumm theorizes, the jury surely knew that entering a finding that Dr. Mileris was not negligent and stopping there was *not* the way to do it.

*DeMoss v. Hamilton*, 644 N.W.2d 302 (Iowa 2002), is relevant here.  This was a medical malpractice action against a physician who allegedly failed to timely diagnose the decedent's heart condition, resulting in his suffering a fatal heart attack the next day.  *Id.* at 304.  We held the district court committed a legal error in giving a comparative fault instruction allowing the jury to allocate a percentage of fault to the decedent for failing to heed his cardiologists' prior advice to reduce his risk of heart attack.  *Id.* at 304, 307.  Yet we found no ground for reversal because the plaintiff had suffered no prejudice.  *Id.* at 307.  We explained,

> The court's instructions and verdict form called upon the jury to first determine the fault, if any, attributable to Hamilton before proceeding to consider the alleged fault of Brian.  The jury found no causal fault on Hamilton's part and, so, in accordance with the court's direction, answered none of the remaining interrogatories.  As a result, error, if any, in the instruction dealing with Brian's comparative fault had no effect on the verdict.

*Id.*; *see also Ladeburg*, 508 N.W.2d at 696 (finding the plaintiff could not have been prejudiced by the submission of an instruction on her comparative fault when the jury found the defendants were not at fault in response to the first question on the verdict form).

We have a similar situation here.  Even if the supplemental instruction sought by Mumm would have corrected a deficiency in the

comparative fault allocation instructions, Mumm suffered no prejudice because the jury found unanimously that Dr. Mileris was not negligent.

Moreover, the lack of a trial transcript stands as a further impediment to any finding of prejudice. For example, we do not know how strong the evidence of Dr. Mileris's negligence was or what counsel said in closing argument about the instructions and verdict forms. Powerful evidence of Dr. Mileris's negligence, coupled with closing arguments that led the jury astray, might suggest a plausible risk that the final verdict resulted from jury confusion, as opposed to the jury's unvarnished, collective assessment of the case against Dr. Mileris. But we don't have such a record here.

Iowa Rule of Appellate Procedure 6.803(1) provides, "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion." This rule requires the appellant to provide a transcript when arguing on appeal that a trial court erred in directing a verdict on a particular issue. *See Powell v. Khodari-Intergreen Co.*, 334 N.W.2d 127, 130 (Iowa 1983) ("Such failure on his part precludes us from disturbing the ruling of the trial court sustaining the motion for directed verdict on the intentional infliction of emotional distress claim."). Likewise, we have indicated that this rule put the burden on the appellant to order a transcript if he wanted to argue on appeal that a jury should have been instructed on certain points of law. *See Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 191 (Iowa 2010).

More generally, we have said, "It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon." *In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005); *see also State v. Ludwig*, 305

N.W.2d 511, 513 (Iowa 1981). This principle led us to affirm on an issue when we did not have a transcript to determine whether the appellant had asked for a particular instruction on that issue. *See Estes v. Progressive Classic Ins.*, 809 N.W.2d 111, 115–16 (Iowa 2012) ("Failure to provide a record requires us to affirm the district court's judgment."); *see also State v. Campbell*, 294 N.W.2d 803, 811 (Iowa 1980) ("Defendant's assertions as to the length of jury deliberations following the [supplemental] instruction are not verified by the record. A defendant may waive error by failing to provide this court with a record which affirmatively shows the basis of the alleged error.").

Accordingly, if the record would have provided some basis for determining that the district court's refusal to answer the first jury question was prejudicial, Mumm needed to provide that record to us. Without that information, we cannot conclude the jury's straightforward verdict absolving Dr. Mileris of negligence is tainted by confusion.

**V. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court and the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Christensen, J., who takes no part.