# IN THE COURT OF APPEALS OF IOWA

No. 18-1305
Filed August 21, 2019

IN THE MATTER OF J.S.,
Alleged to be Seriously Mentally Impaired,

J.S.,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Carla T. Schemmel, Judge.

J.S. appeals two involuntary civil commitment orders. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Tyler Phelan of Borseth Law Office, Altoona, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

In this consolidated appeal of two involuntary civil commitment orders, J.S. contends the district court erred in (1) failing to terminate the proceedings and dismiss the applications on receipt of a physician's report and (2) prohibiting him from possessing firearms.

## I.    *Background Facts and Proceedings*

An individual filed an application alleging J.S. had a serious mental impairment pursuant to Iowa Code section 229.6 (2018).  According to the application, J.S. threatened "he would kill an ex-girlfriend, her children, [and] family, [and] also would kill [the applicant and her] family if [she] turned him in."  The applicant characterized J.S. as "delusional, in a state of psychosis."  The supporting affidavit stated J.S. had post-traumatic stress disorder based on "multiple blows to the head throughout his 11 years serving in the army."  The affidavit further stated J.S. used substances "to try to cope" and was "prone to much anger and rage when substances [were] involved."

On the same day, another application was filed alleging J.S. to be a person with a substance-related disorder pursuant to Iowa Code section 125.75.  The affiant attested that when J.S. used certain substances, he "worked himself up into such anger and rage that he threaten[ed] lethal harm to those he [was] upset with."

Physicians' reports in both cases found J.S. "capable of making responsible decisions with respect to his . . . hospitalization or treatment."

A hearing on the applications was held on June 29, 2018, two days before a change in the law governing commitments under chapters 125 and 229. Following the hearing, a magistrate acknowledged the physician's testimony that

J.S. possessed judgmental capacity but concluded based on the totality of the record that J.S. had a serious mental impairment and a substance-related disorder. The magistrate committed J.S. to inpatient treatment for his serious mental impairment and ordered outpatient treatment for his substance-related disorder. The magistrate also ordered J.S. not to "ship, possess, receive, transport, or cause the transport of any firearms or ammunition." *See* 18 U.S.C. 922(g)(4). The order was filed on June 29, 2018.

On July 6, 2018, pursuant to a periodic review, a second magistrate discharged and terminated the involuntary proceedings based on the physicians' reports that J.S. possessed judgmental capacity. The magistrate retained the firearms prohibition.

J.S. appealed the orders. Following a de novo trial, the district court dismissed the chapter 229 application based on the physician's opinion that J.S. had sufficient judgment to make responsible decisions with respect to his hospitalization or treatment. The court retained the firearms prohibition. With respect to the chapter 125 application, the court found J.S. to be a person with a substance-related disorder and ordered outpatient treatment. Again, the court retained the firearms prohibition. J.S. appealed.

## II.    *Failure to Dismiss Applications*

J.S. argues the magistrate who initially considered the applications "erred in failing to terminate the proceedings and dismiss the application[s] upon receiving the physician's report filed prior to the initial commitment hearing." The State responds that "[n]o transcript of the initial hearing before the magistrate was

ordered or prepared so it is unknown whether this issue was promptly raised." Accordingly, the State asserts, "Error was not preserved."

Iowa Rule of Appellate Procedure 6.803(1) states:

Within seven days after filing the notice of appeal, the appellant must use the combined certificate to order in writing from the court reporter a transcript of such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record. If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion.

J.S. did not order the transcript of the initial commitment hearing within seven days after filing his notice of appeal or at any time thereafter. Approximately ten months after his appeal was logged, he asked the clerk of the district court to transmit the entire record, "including the physical media (audio recording from initial commitment hearing on June 29, 2019)." J.S.'s request for the record came too late.

"Without the benefit of a full record of the lower courts' proceedings, it is improvident for us to exercise appellate review." *In re F.W.S.*, 698 N.W.2d 134, 135–36 (Iowa 2005); *see also Mumm v. Jennie Edmundson Mem'l Hosp.*, 924 N.W.2d 512, 520 (Iowa 2019) ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon." (quoting *F.W.S.*, 698 N.W.2d at 135)); *In re C.T.*, No. 18-0320, 2018 WL 6706242, at *1 (Iowa Ct. App. Dec. 19, 2018) (finding *F.W.S.* controlling). We conclude J.S. failed to preserve error on his assertion that the first magistrate was obligated to dismiss the proceedings.

J.S. alternatively asks us to review the issue under an ineffective-assistance-of-counsel rubric. We assume without deciding that an ineffective-assistance-of-counsel claim is available in these types of proceedings, where a respondent possesses a statutory right to counsel. *See* Iowa Code §§ 125.76, 125.78(1), 229.8(1), 814.10 (requiring appointment of counsel in specified proceedings); *In re C.C.*, No. 17-0884, 2018 WL 2084851, at *4 n.1 (Iowa Ct. App. May 2, 2018); *In re J.H.*, No. 12-1133, 2013 WL 1760183, at *3 (Iowa Ct. App. Apr. 24, 2013). We also assume without deciding that the *Strickland* standard[1] for evaluating ineffective-assistance-of-counsel claims applies in this context. *See C.C.*, 2018 WL 2084851, at *4. Despite the absence of an evidentiary record, we conclude the claim may be resolved based on the law at the time the first magistrate ordered hospitalization.

Before July 1, 2018, Iowa Code section 229.10(3) stated: "If the report of one or more of the court-designated physicians or mental health professionals is to the effect that the individual is not seriously mentally impaired, the court *may* without taking further action terminate the proceeding and dismiss the application on its own motion and without notice." (Emphasis added.) Similarly, Iowa Code section 125.80(3) stated: "If the report of a court-designated licensed physician or mental health professional is to the effect that the respondent is not a person with a substance-related disorder, the court, without taking further action, *may* terminate the proceeding and dismiss the application on its own motion and without

---

[1] That standard requires a respondent to prove a breach of an essential duty and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

notice." (Emphasis added.) Effective July 1, 2018, the legislature amended the provisions to change "may" to "shall." *See* 2018 Iowa Acts, ch. 1056, §§ 1, 8.

Ordinarily, the term "may" confers discretion. *See State ex rel. Wright v. Iowa State Bd. of Health*, 10 N.W.2d 561, 563 (Iowa 1943). Although there are exceptions, we believe the legislature's use of "may" in the cited sentences was intended to leave termination of the proceedings to the discretion of the magistrate. Our conclusion rests on a reading of the entirety of sections 229.10 and 125.80. Both use "shall" to denote a mandatory function and "may" to denote an optional function. For example, the provisions state a physician's examination "*shall* be conducted" and also state the physician "*may* consult with or request the participation in the examination of any consulting mental health professional." Iowa Code §§ 229.10(1)(a)–(b), 125.80(1)(a)–(b). Because termination of the proceedings was discretionary before July 1, 2018, J.S.'s attorney had no duty to move for dismissal of the June 29, 2018 hearing or order. Accordingly, J.S.'s ineffective-assistance-of-counsel claim fails.

### III. *Firearms Prohibition*

J.S. next contends the district court erred in including the firearms prohibition. The State counters that the issue was not preserved for review. We disagree. During the de novo trial before the district court, the court questioned the physician about J.S.'s access to firearms. Additionally, J.S. testified he turned his guns over to his brother before the incident. Finally, the assistant county attorney questioned J.S. about the prohibition. Although J.S. did not specifically request removal of the firearms prohibition, we believe all concerned were aware of the issue and the issue was before the court. *See UE Local 893/IUP v. State*,

928 N.W.2d 51, 60 (Iowa 2019) (stating "the record must at least reveal the court was aware of the claim or issue and litigated it" (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002))). We conclude error was preserved.

The State alternatively argues the issue is moot because the proceedings were dismissed. Again, we disagree. In *In re B.B.*, 826 N.W.2d 425, 432 (Iowa 2013), the supreme court rejected a mootness challenge to the appeal of a dismissed involuntary commitment proceeding. The court reasoned that the proceeding carried with it a presumption of collateral consequences. *Id.* The same rationale applies here. We conclude the issue of the firearms prohibition is not moot and we proceed to the merits.

18 U.S.C. section 922(g)(4) states:

> It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The provision also lists eight other predicates for imposing the prohibition, none of which apply to the facts of this case.

As noted, the district court dismissed the chapter 229 application alleging J.S. was seriously mentally impaired. Having dismissed the application, the court could not rely on a serious mental impairment to support the firearms prohibition.

We turn to the court's inclusion of the same prohibition in the chapter 125 outpatient-treatment order. The court based the prohibition on findings that J.S. was "mentally ill" and "dangerous." As noted, the "mentally ill" finding fell by the wayside with the dismissal of the chapter 229 application. The finding of

"dangerousness" did have grounding in chapter 125, which requires the applicant to attest to a belief that the person presents "a danger to self or others." Iowa Code § 125.75(2)(a); *In re D.K.*, No. 14-1403, 2015 WL 3624391, at *2 (Iowa Ct. App. June 10, 2015) (observing the legislature added a dangerousness component to the statute). But there must also be grounding in the federal statute, and none of the nine federal predicates for imposition of the firearms prohibition are premised on a substance-related disorder. *See* 18 U.S.C. 922(g)(1)-(9). Because the firearms prohibition contained in the chapter 125 outpatient order finds no support in federal law, we reverse the prohibition clause of the order.

## IV. *Disposition*

We affirm the district court's dismissal of the chapter 229 proceeding and the district court's order referring J.S. to outpatient treatment for his chapter 125 substance-related disorder. We reverse the district court's imposition of the firearms prohibition in both orders and remand for entry of an order striking those prohibitions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**